The opinion of the Court was delivered by
Bay, J.
The two first grounds may be considered together, as they are very nearly "allied to each other. And, as to them, I am clearly of opinion, with the presiding judge, who tried the cause, that every ferryman should be considered, in law, as a common carrier, and liable at all events, for the safe carriage of goods and passengers ; except in cases occasioned by the act of Grocl, or public enemies, which cannot be pretended in this case.
A common carrier is defined, in law, to be one who carries goods for hire ; and he is made liable for them in consequence of this hire or reward. Jones on Bailment, 16. But a ferryman has another quality attached to his character. He is a man of high public trust and confidence ; and the lives of passengers, as well as goods, are entrusted to his good conduct and management; and, therefore, he is at all times to be ready to transport both in safety, and with all convenient despatch, across all water courses where ferries are established by law. He exercises a high public trust, and therefore has many immunities attached to him.'[1] He is exempted from militia duty, even in time of war. He cannot be compelled to serve on juries, or to work on the high roads in the country. These exemptions, in addition to his hire, impose a high obligation on him, at all times, to be in readiness at the call of travellers, and to have all his boats and hands in good and proper order, for the conducting of *goods and passengers across the river, or water course, over which his ferry is established. ' ^
From the foregoing principles, then, I take it to be well established, by law, that a ferryman is liable as a common carrier.
Let us next see if there were any circumstances in this case to excuse Mm.
It is said, and admitted, that the wind was high and the current rapid. To each of these allegations in justification of defendant, an easy answer is to be given :
First — If the general bent of the weather, or state of the atmosphere, be stormy, or tempestuous, the ferryman is perfectly excusable for not venturing over, if he apprehend danger ; and has a right to postpone any attempt to cross till the storm or danger be over.
Second' — If there be freshets in the river, which render it highly dangerous or impracticable for him to cross, he may, in like manner, refuse to go, till the water fall, and danger subside. In fact, the law gives him the right of judging when it is safe and proper for him to cross, or not. And if he will venture out, at an improper season, he is most unquestionably liable. But if a sudden gust of wind, or storm, arise, *382 and an injury be sustained, after he is under way, then it is clear that the law will not charge him ; because man cannot foresee sudden storms and tempests, and guard against them. But if he venture at perilous times, then he shall become chargeable.
The next inquiry is, whether due diligence was used by the ferrymen, after they had got into the river, or not ?
From the best view I have been able to take of the case, there was not; for it appears, that when the force of the current came against the boat, instead of keeping her head to the current, which might easily have been done, the .helmsman, or the man who steered the boat, turned her head down : and although the patroon of the boat chastised him for his inatten-„9„1 tion, yet the whole of the hands laid down their oars and poles, *and left the flat or boat at the mercy of the current, until she had drifted down the river near a mile, where the horses were lost. It appears to me, therefore, that there was great want of diligence on the part of the boatmen, on this occasion; and that it was principally owing to that circumstance, that the accident or loss of the horses happened.
Upon the whole of this case, therefore, in whatever point of view it can be considered, I am clearly of opinion that the verdict of the jury was wrong, and that there should be a new trial.
Colcock and Gantt, JJ., concurred.

 1799, 8 Stat. 492, <S 22; 1841, 11 Stat. 203, § 135.