13286

CHEWNING v. CLARENDON COUNTY

(161 S. E., 777)

508

510

512

514

515

516

518

519

*Messrs. Dinkins & Stukes* for appellant,

*Messrs. Epps & Levy* and *J. W. Wideman* for respondent,

December 3, 1931.

The opinion of the Court was delivered by Mr. Justice Carter.

I am unable to agree to the conclusion reached by Mr. Justice Cothran in his proposed opinion in this case, and, therefore, most respectfully dissent therefrom.

The plaintiff, Marian Louise Chewning, as administratrix of the estate of her deceased husband, J. H. Chewning, in behalf of herself and her three children, commenced this action against the defendant, Clarendon County, in the Court of Common Pleas for Clarendon County, in August, 1928, for damages in the sum of $25,000 for the alleged wrongful death of said J. H. Chewning, alleged to have resulted from the breaking in of a bridge of the said county over which the deceased "was driving a tractor of the county and while in its employ." Issues being joined, the case was tried at the fall, 1928, term of said Court, before his Honor, Judge S. W. G. Shipp, and a jury and at the close of the testimony on behalf of the plaintiff, motion was made by defendant for an order of nonsuit, which motion his Honor, Judge Shipp, refused. Thereafter the defendant offered testimony, and at the conclusion of all the testimony the defendant asked the Court for direction of a verdict. This motion his Honor also refused and the case was submitted to the jury, resulting in a verdict for the plaintiff in the sum of $4,250.00. From the judgment entered on the verdict the defendant has appealed to this Court.

The exceptions impute error to the trial Judge in refusing to order a nonsuit, refusing to direct a verdict for the defendant, and also in his charge to the jury.

For the purpose of a full statement of the case and a clear understanding of the issues involved, we quote herewith the pertinent allegations of the complaint, and answer:

"COMPLAINT

"2. That on or about June 20th, 1928, one J. H. Chewning, aged thirty-eight years, and a resident of Clarendon

County, was in the employ of Clarendon County as the driver and operator of a large tractor, the property of the defendant, and the said J. H. Chewning was under the orders and direction of the Supervisor and County Board of Commissioners of Clarendon County, and at the time and place hereinafter alluded to, was operating said tractor in pulling a machine plow, which plow was operated by one Henry Blackmon, also in the employ of the defendant county.

"3. That, thus, the said J. H. Chewning was engaged in plowing up, for the purpose of repairs, the public road or highway in Clarendon County leading from Davis Station to Davis Cross Roads, the said road being a part of the public road system of Clarendon County, and it was the duty of the said County to keep the said road properly worked and the bridges thereon safe and in proper repair.

"4. The plaintiff is informed and believes that the said tractor weighed about six tons and had been purchased and secured by the defendant County for the purpose of using the same along the above mentioned road and along other roads in Clarendon County, and over the bridges thereon.

"5. The plaintiff is informed and believes that on the day in question the said J. H. Chewning, in the discharge of his duties, reached Potato Creek, which flows across said roadway, and found it necessary to operate said tractor over and along the bridge that spans said creek, which crossing, as aforesaid, was necessary in the performance of his duty to the county.

"6. That while said tractor was upon said bridge the timbers of the bridge cracked, bent and broke, throwing the said J. H. Chewning into the water of the creek and throwing the tractor against and upon him in such manner as to terribly wound, bruise, and injure the said J. H. Chewning, and to such an extent that the said J. H. Chewning lingered until June 22nd, 1928, and then died from the effects of said injury, and all to the damage of those for whose benefit this

suit is brought in the sum of Twenty-five Thousand ($25,-000.00) Dollars.

"7. That the said J. H. Chewning had nothing to do with the repair and maintenance of the bridges along said road, knew nothing of the strength of bridge materials, and knew nothing of the condition or structure of the bridge above alluded to, all of such knowledge and duties being charged to other officers and agents of Clarendon County.

"8. The plaintiff is informed and believes that the death of the said J. H. Chewning was caused on account of the said bridge being defective and in negligent repair, the timbers thereof being defective, decayed, sappy, too far apart, and too small in size for the support of the tractor, which the defendant required the deceased to operate across said bridge, the entire bridge being defective and in negligent repair in view of the weight of modern trucks, tractors and road machinery now in common use by the public and by Clarendon County, and all of said defects were through the neglect and mismanagement of Clarendon County, its officers and agents.

"9. The plaintiff is informed and believes that the said J. H. Chewning did not in any way bring about said injury or damage by his own act, nor did he negligently contribute thereto, and his load did not exceed the ordinary weight.

"10. That the said J. H. Chewning died intestate, leaving as his sole surviving heirs at law and distributees, his widow, Marian Louise Chewning, who has heretofore duly qualified as administratrix of his estate, and his three children: Lila Chewning, aged ten years, Harry Chewning, aged seven years, and Evelyn Chewning aged five years; and this action is brought by the plaintiff in her representative capacity in their behalf."

"ANSWER

"FOR A FIRST DEFENSE

"1. Admits the allegations of paragraph 1 of said complaint and, upon information and belief, the allegations of

paragraphs 2, 3, and 10, and only so much of paragraph 6 as alleges the injury and death of J. H. Chewning, the remainder of said paragraph being hereby denied; and only so much of paragraph 4 as alleges the ownership of said tractor and its weight, the remainder of said paragraph being hereby denied; and denies the allegation of paragraphs 5, 7, 8 and 9; and further denies all the allegations of the said complaint inconsistent with the allegations of this answer."

### "For a Third Defense, Alleges

"3. That there was no defect in the bridge referred to in the complaint occasioned by any neglect or mismanagement of the county and it was in a safe condition for ordinary traffic and the damage to it and the injuries to the said J. H. Chewning were occasioned by the great and unusual weight of his vehicle, which far exceeded the ordinary weight.

### "For a Fourth Defense, Alleges

"4. That the said J. H. Chewning was experienced in the operation and management of tractors, and was on that account employed by defendant, but was cautioned repeatedly and carefully by defendant as to the danger of driving the unusually large and heavy tractor, upon which he was injured, upon bridges; and he was specifically instructed by defendant not to drive the tractor upon a bridge without getting out and carefully inspecting such bridge and satisfying himself of its sufficient strength, as the county had lighter road machinery which it would use; and then only to drive over the center of the bridge thus distributing the great weight of the tractor, adjusting the trailing machinery to follow in the center.

"That upon the occasion of his injury, the said J. H. Chewning disregarded negligently and wilfully and disobeyed such instructions and was guilty of negligent and careless conduct in the following particulars, which acts brought about his injuries, or at least negligently contributed

thereto as proximate causes without which said injuries would not have occurred:

"(1) Rushing upon the bridge without inspecting it as he was instructed;

"(2) Failing to adjust his machinery and go over the middle of the bridge as he was likewise instructed;

"(3) Failing to release the clutch of the tractor and thus disengage its gears when the accident happened.

## "For a Fifth Defense, Alleges

"5. That the accident was an ordinary risk of the employment of operating a heavy tractor and road machinery upon county roads and was assumed by the said J. H. Chewning when he undertook such employment."

## Exceptions 1 and 2

Under the first exception error is imputed to the trial Judge in refusing to order a nonsuit upon the several grounds upon which the motion was based, and the second exception alleges error in refusing to direct a verdict upon the several grounds stated in the motion. These exceptions, which will be considered together, read as follows:

"I. It is respectfully submitted that the Court erred in refusing appellant's motion for an order of non-suit made at the close of respondent's evidence upon the ground, set forth in the record, that the respondent had alleged and proved that the load of her intestate exceeded the ordinary weight instead of submitting evidence to the contrary, that she had submitted no evidence of neglect or mismanagement on the part of the defendant county, and that she had failed to adduce any evidence that the deceased used due care and did not bring about the injury by his own act or negligently contributed thereto; in all of which respects the respondent failed to come within the terms of the statute, Section 2948, Volume 3, Code of 1922, under which, together with Section 2950, she brought her action.

"II. That the Court erred in refusing appellant's motion for a directed verdict in its favor made at the conclusion of all of the testimony upon the grounds, appearing in the record, that no reasonable inference can be drawn from the testimony other than that the load of the deceased exceeded the ordinary weight and that he negligently contributed to his injuries by failing to inspect the bridge and satisfy himself of its safety, by driving on the edge instead of the center of the bridge, and by failing to release the clutch of the tractor, all of which were in violation of undisputed warnings and instructions given him by his employer, the appellant, for his own safety and also conclusively shown by the testimony to be in violation of the standards of due care under the circumstances."

A reference to the pleadings shows that the defendant admits that the said J. H. Chewning, at the time of the occurrence in question, was in the employ of the defendant, Clarendon County, as driver and operator of a large tractor of the weight alleged, the property of the defendant; that he was under the orders and direction of the supervisor and county board of commissioners of said county, and at the time and place when he received the injuries that caused his death was operating the said tractor in pulling a machine plow, the plow at the time being operated by one Henry Blackmon, who at the time was also in the employ of the defendant, and that the plow was being operated, as aforesaid, for the purpose of repairing the public road or highway in the said county leading from Davis Station to Davis Crossroads, which road constitutes a part of the public road system of the said County of Clarendon. It is further admitted that it was the duty of the defendant county "to keep the road properly worked and the bridges thereon safe and in proper repair," including the road in question; and that the plow and tractor being used on said road at the time were owned by the defendant. The defendant also admits that the deceased was injured in attempting to

drive the said tractor over the said bridge, at the time and place alleged by the plaintiff, and that as a result of the injuries so received he died, leaving as his sole surviving heirs at law and distributees his widow, Marian Louise Chewning, who has heretofore duly qualified as administratrix of his estate, and his three infant children, named in the complaint, ages ten years, seven years, and five years, respectively, the action being brought by the plaintiff in her representative capacity. There was testimony introduced from which it may be reasonably inferred that the said J. H. Chewning went upon the bridge in question in the discharge of his duties, and that the injury which resulted in his death was received while in the discharge of his duties as an employee of the defendant; that the tractor so used on that occasion was purchased by the county for the purpose which it was being used, repairing the public highway of said county leading from Davis Station to Davis Crossroads, and in the performance of that work it was necessary to cross the bridge spanning the stream that crossed the said road, so as to repair the whole road, and it was, therefore, necessary for the said J. H. Chewning to drive the tractor upon the said bridge. It may be reasonably inferred from the testimony that the said J. H. Chewning in driving the tractor upon the bridge did no more and no less than the average and reasonably prudent man would be expected to do on such an occasion. Such may be said of his actions when the bridge gave way. It is the contention of the defendant that the deceased caused his injury by failing to inspect the bridge before driving upon it with an overload, failure to procure a lighter tractor for crossing the bridge, and failure to release the clutch of the tractor when the accident happened; and, also, by driving on the side of the bridge and placing too much of the weight on the side of the bridge; that he should have followed his instructions and have adjusted the trailing machinery (the machine plow) to follow the center and have driven on the center of the bridge. It

is the contention of the defendant that the failure to do these things caused the injury to the deceased which resulted in his death, "or at least negligently contributed thereto as the proximate cause without which said injuries would not have occurred." The defendant offered testimony in support of these contentions, but as we view the case these questions were questions for the jury, even under the defendant's testimony. Furthermore, there was other testimony and circumstances in the case to be considered which in our opinion made a case for the jury. There was testimony introduced which, in effect, tends to show that while the deceased was on the said bridge attempting to drive the said machinery across the same for the purpose of repairing the county's highway on the other side of the bridge, in performance and in the discharge of his duties, some of the timbers of the bridge broke and the bridge gave way, throwing the deceased into the water below and the tractor upon him, thereby seriously injuring him, which injuries caused his death a day or two afterwards; that while the defendant knew how to operate the tractor in question for the purpose of pulling the machine plow being used in the repair of the road, shaping up the dirt, he had no knowledge of the construction, repair, or maintenance of bridges. From the testimony the jury might also reasonably infer that the deceased had little or no knowledge of the strength of the bridge in question, whether it was sufficient for driving the said tractor across it or not. Further, as contended by respondent, under the testimony and circumstances of the case, such knowledge and duties might reasonably be presumed to have been intrusted to the county supervisor and other officers of the said county. There was also testimony tending to show that the timber of which the bridge in question was constructed was not of sufficient strength to be used in the construction or repair of the bridge and that some of the timber was in a rotten or decayed condition, from which fact negligence on the part of the county might reasonably be inferred.

The appellant emphasizes the fact that the tractor ■ in question was of considerable weight and contends that under the proof the plaintiff could not recover for the reason that the weight of the vehicle driven on the bridge by the deceased, J. H. Chewning, exceeded the ordinary weight, and in this connection calls attention to Section 2948, Vol. 3, Code of 1922 (as amended by Act April 14, 1925 [34 St. at Large, p. 287]), and Section 2950. The plaintiff alleged, in substance, that the tractor in question, which had been purchased and secured by and for the defendant for the purpose of using the same in repairing and keeping up its roads in said county, including the road in question, weighed about six tons, but further alleged that the same, the load that the plaintiff's intestate attempted to drive over the said bridge, did not exceed the ordinary weight, and there was testimony tending to prove this allegation. The exact weight of the tractor was not established, but some of the testimony tends to show its weight to be six tons, while other of the testimony was to the effect that its weight was five tons. The witness Elbert Davis, who testified in behalf of the defendant, stated that it was called a five-ton tractor and that was supposed to be its weight. This witness also testified that he had driven tractors for a period of eight or ten years and had driven this particular tractor about three months. The same tractor, under another driver, employed by the said county, was driven over the road in question a few days prior to the accident. It also appears from the testimony that this tractor was about the usual size in use in that locality. A number of tractors were used in that section. At least, there was some testimony from which such inference could reasonably be drawn. The witness, P. H. Grumble, who testified for the plaintiff, testified to the effect that this tractor was not over the usual size. He also testified, referring to the tractor in question:

"Q. Is it heavier, you think, than Coca-Cola trucks heavily laden? A. No, sir, I do not think.

"Q. What about lumber trucks? A. Plenty of lumber trucks just as heavy as the tractor when they are loaded with logs and lumber.

"Q. Is this a public road from Davis Station? A. Public Highway."

When asked what the ordinary load was for people using the road in question, after giving this description of the traffic on said road, this witness stated: "Oh, there is all kinds of loads. Those Coca Cola trucks weigh 6,000 or 7,000 pounds, I think, outside of the weight of the truck." And when asked how much the truck would weigh, he stated: "Those big Mack trucks would weigh 2,800 to 3,000 pounds." From this the jury might reasonably infer that the trucks passing over the bridge, including the freight they carried, weighed as much as five tons, the same weight as the tractor, according to some of the witnesses. While the witnesses did not undertake to state the weight of a truck loaded with logs, in my opinion the jury would be warranted in applying their knowledge to the weight of such loads and reasonably reach the conclusion that the tractor in question was no heavier than the trucks loaded with logs, lumber, etc. It appears that the road where the plaintiff's intestate was injured, and from which injury he died, was open for all kinds of traffic. The traffic thereon was not limited, but this road was, according to some of the witnesses, a public highway and over which "plenty" of trucks passed which were as heavy as the tractor in question. The road was open and used by lumber trucks, log trucks, and Coca Cola trucks, as well as automobiles and wagons. At least this is a reasonable inference to be drawn from the testimony. In my opinion the jury was warranted in reaching the conclusion that the tractor referred to, which constituted the "load" involved in this case did not exceed the ordinary load under the meaning of the statute referred to, and, therefore, the trial Judge very properly refused defendant's motions for a nonsuit and direction of a verdict on this ground.

The remaining exceptions, 3, 4, 5, 6, 7, 8, and 9, which will be reported with the case, raise questions with reference to his Honor's charge to the jury. I do not consider it necessary to pass upon these exceptions separately, or to enter into a full discussion of the same, but deem it sufficient to state that when the questions raised by these exceptions are considered in the light of the entire charge, in my opinion, no error is apparent, and certainly there was no prejudicial error. Appellant's counsel emphazises the allegations of error charged under the sixth exception, which exception reads as follows: "That the Court erred in refusing the appellant's seventh request, that if the accident should have been reasonably foreseen in the operation of the tractor over County roads and bridges then the jury should find for the defendant as a worker assumes the ordinary risks of his employment and the employer is not liable for damages from such risks for the reason that such is an accurate statement of the law and applicable to the issues of this case and the appellant must, of necessity, have been prejudiced by the refusal of it."

The request to which reference is made in this exception was presented to his Honor, the trial Judge, by defendant's counsel, along with a number of other written requests, before his Honor charged the jury, and during the course of the charge his Honor passed upon defendant's requests in the order presented, the request in question being the last one on the list of requests presented, and, so far as the record discloses, no reference was made to it. Evidently the presiding Judge inadvertently overlooked it. Under such circumstances, if the defendant considered it important the Court's attention should have been called to it, and the defendant having failed to do so, the exception is not well taken. Furthermore, when the whole charge is considered in connection with the testimony in the case, I am satisfied that the defendant has no ground for complaint.

As a majority of the Court concur in this opinion, it becomes the opinion of the Court. The judgment of the lower Court, therefore, is affirmed.

Mr. Chief Justice Blease concurs in result.

Mr. Justice Stabler and Mr. Acting Associate Justice John I. Cosgrove concur.

Mr. Justice Cothran (dissenting) : This is an action under Section 2948 of the Code of 1922 (as amended by Act April 14, 1925 [34 St. at Large, p. 287]), and Section 2950, for damages on account of the alleged wrongful death of the plaintiff's intestate, John H. Chewning, her husband, resulting from the breaking in of a bridge of the county over which intestate was driving a tractor owned by the county and operated by the intestate as an employee of the county and under the direction of a superior officer.

The complaint alleges that the collapse of the bridge was due to the defective condition of the timbers and the negligence of the county in not maintaining it in a proper state of repair in view of the known use of the bridge by the county. It is also alleged that the injury received by the intestate was not caused by his contributory negligence and that the load did not exceed the ordinary weight although it is alleged that the tractor weighed "about six tons," 12,000 pounds.

In the defendant's answer it was admitted that the tractor weighed about six tons as alleged in the complaint; that such weight "was great and unusual and far in excess of the ordinary weight"; that the deceased was experienced with tractors and had been warned by the appellant of the danger of crossing bridges, instructed never to go upon one except after careful inspection as lighter machinery could be used, and then to drive over the center of the bridge in order to distribute the great weight.

The answer further denied all allegations of the complaint as to defects and care, and alleged as defenses various acts of contributory negligence and that the deceased had as-

sumed all ordinary risks of his employment of driving a heavy tractor on county roads.

The evidence showed that the county had purchased a tractor for use in drawing a plow used in repairing a certain highway; that in the course of the operation the deceased, employed to drive the tractor, was directed to cross the bridge in question, and that while doing so the bridge collapsed causing his fall and death; that some of the timbers of the bridge were defective and that sufficient repairs had not been made upon the bridge to ensure the safe passage of the tractor over it; that the tractor weighed at least 5 tons, 10,000 pounds; that it was the largest that had ever been seen in that vicinity and the weight of an ordinary load upon wagon or other vehicle was 1,000 pounds.

At the close of the testimony for the plaintiff the defendant moved for a nonsuit, and at the close of all of the testimony for a directed verdict, both of which were refused. We do not deem it necessary to consider any of these grounds except the ground that the plaintiff had not shown that the load upon the vehicle operated by the deceased did not exceed the ordinary weight.

The verdict of the jury was in favor of the plaintiff, for $4,250.00, and from the judgment entered thereon the defendant has appealed.

It is to be remembered that the liability of a county for the negligence of its officers and agents in connection with the construction, maintenance, and repair of its highways and bridges, is exceptional, and specifically limited by statute to injuries within a prescribed sphere. There was no liability at common law on account of injuries so received; the statute alone creates it; and to the statute, as construed by the decisions of this Court, resort must be had to determine whether an injury sustained under certain circumstances, comes within the purview of the statute.

The statute, Section 2948, as amended, is a process in the evolution of the law. The act of which it is a reproduction

was intended to provide a remedy (under certain prescribed conditions) which did not theretofore exist; to remove the immunity which a county enjoyed under the common law, from liability in damages, on account of an injury sustained by a person "through a defect in the repair of a highway," due to the negligence of the official representatives of the county.

A municipal corporation, a county for instance, being a governmental agency, charged with the duty of keeping its avenues of travel in proper repair, is not liable, in a civil action, for damages on account of injuries sustained in consequence of a breach of this duty on the part of the agents of the corporation in the absence of a statute imposing such liability, and only then upon a substantial compliance with the requirements and conditions upon which such liability is predicated. *Bryant v. City Council,* 70 S. C., 137, 49 S. E., 229; *Gibbes v. Beaufort,* 20 S. C., 218; *White v. City Council,* 2 Hill, 572; *Coleman v. Chester,* 14 S. C., 290; *Black v. Columbia,* 19 S. C., 412, 45 Am. Rep., 785; *Young v. City Council,* 20 S. C., 116, 47 Am. Rep., 827; *Dunn v. Barnwell,* 43 S. C., 398, 21 S. E., 315, 49 Am. St. Rep., 843; *Bramlett v. Laurens,* 58 S. C., 60, 36 S. E., 444.

In *Randal v. Highway Department,* 150 S. C., 302, 148 S. E., 57, 58, it was held in the Circuit decree of his Honor, Judge Johnson, which was adopted as the opinion of the Court: "In this State neither the commonwealth, nor any of its political subdivisions, is liable in action *ex delicto* unless made liable by express enactments of the General Assembly, except where the acts complained of, in effect, constituted a taking of private property for public use without just compensation. *Young v. City Council of Charleston,* 20 S. C., 116, 47 Am. Rep., 827; *Mullinax v. Hambright,* 115 S. C., 22, 104 S. E., 309; *Faust v. Richland County,* 117 S. C., 251, 109 S. E., 151; *Derrick v. Columbia,* 122 S. C., 29, 114 S. E., 857; *Kneece v. Columbia,* 128 S. C., 375, 123 S. E., 100."

As the Court says in *Chick v. Newberry Co.*, 27 S. C., 419, 3 S. E., 787, 788: "Prior to its adoption, the disability * * * was general, and still remains as to all except such as are taken out by the act."

In that case it was held that a county was not liable for injuries caused by a defective flat boat on a ferry operated by the county commissioners, the Court declaring: "The act in question undertakes to enumerate the cases in which the right to sue the county is given, viz., for 'defects in the repair of a highway, causeway, or a bridge.' This enumeration, as it seems to us, excludes matters not enumerated"—which illustrates with what strictness the statutory liability is limited. There it was conceded that the ferry connected the two termini of the highways at the river; that it was owned and controlled and operated by the county commissioners; that the flat boat was defective; and that injury resulted.

By the express provisions of the statute creating this exceptional liability, certain conditions to a recovery of damages are imposed:

1. It must be affirmatively shown that there was a defect in the highway or bridge;

2. It must affirmatively appear that the presence of the defect was "occasioned by its (the county's) neglect or mismanagement";

3. It must be alleged and affirmatively shown, contrary to the usual rule, that the injured person "has not in any way, brought about such injury or damage by his own act, or negligently contributed thereto";

4. It must be alleged and affirmatively shown that the load upon the vehicle operated by the injured person did not exceed "the ordinary weight."

Upon a review of the conflicting evidence in the case, it may be rightly concluded that there was some evidence tending to show that there were defective timbers in the bridge, which would be sufficient to carry that issue to the jury.

We think, too, that considering the work in which the county authorities were engaged, the repair of the highway, in which the officials made use of heavy tractors, which naturally were expected to cross the bridges of the highway, it was their duty to provide and maintain bridges for such anticipated use, of sufficient strength and condition. There was sufficient evidence of a failure to perform this duty, to carry the issue to the jury, if the defendant had been an ordinary tort-feasor. It was, as has been seen, a tort-feasor charged with liability, only under certain specified conditions, which of course had to be established. One of these conditions was that the injured person was, at the time, operating a vehicle carrying a load which did not exceed the ordinary weight.

The original Act was passed long before the coming of automobiles and tractors; manifestly it contemplated horse-drawn vehicles, carrying such loads as were common to that class of vehicles; the only other vehicles extant in those days were portable engines and threshing machines, if they could be considered vehicles; we have no doubt but that if one of these machines, weighing much more than the ordinary weight of loads, had crashed through a bridge, the loss would not have come within the terms of the statute, for it could not be said that the engine or thresher was of ordinary weight.

In 13 R. C. L., 375, it is said: "So a municipality is only called upon to make provision for carriages of ordinary width which people are accustomed to use, and while a person is at liberty to use the way with whatever vehicle he may see fit to drive upon it, which is fit for that purpose, if he uses one of unusual construction or of unusual weight, he cannot hold the municipality liable for accidents happening because of its unusual character, provided the highway is constructed for ordinary vehicles and would have been reasonably safe for them."

The original Act, with certain amendments, not germane to the present issue, has been reproduced in the Act of 1925, 34 St. at Large, p. 287, which contains the same condition, that the injured person cannot recover damages if his load exceeded the ordinary weight.

The plaintiff evidently appreciated the necessity of alleging compliance with the conditions imposed by the statute; it is alleged in the complaint, that the tractor weighed 6 tons, 12,000 pounds, and that the load, evidently the weight of the tractor, "did not exceed the ordinary weight." It seems to me that the allegations of the complaint conclusively show that the use of the tractor was for the temporary purpose of repairing the highway; an unusual and extraordinary use, certainly therefore not ordinary, in relation to travel, and that the weight was equally extraordinary. It appears impossible to hold that the passage of a vehicle weighing 6 tons could be considered an ordinary occurrence upon a country road. It is noticeable that there was not the slightest effort on the part of the plaintiff to establish the fact that the load was of ordinary weight.

Aside from the impression of an ordinarily intelligent man that the tractor did not constitute a load of ordinary weight, a witness for the plaintiff testified that the ordinary weight of a load in that community, over that bridge, was 10 sacks of guano, 2,000 pounds, one ton; that the presence of a tractor at that locality was an unusual thing; and that this particular machine was the largest and heaviest that he had ever seen. In view of the allegation in the complaint that the tractor weighed six tons, of the testimony of plaintiff's witness that the weight of the ordinary load was one ton, and of the utter absence of testimony on the part of the plaintiff that the load was of ordinary weight, I do not think that any other reasonable inference could be drawn than that the load was in excess of the ordinary weight.

Webster's International dictionary defines the adjective "ordinary" as "common; customary; usual."

In 46 C. J., 1132 "ordinary" in its adjectival use is defined with footnote citations of authority for each definition, as "* * * according to established order; accustomed; common; common in recurrence; conforming to general order; customary; established; methodical; normal; often recurring; regular; settled; usual; that which has been established and is customary."

Words and Phrases, First Series, Vol. 6, p. 5027:

"The word 'ordinary,' a synonym of 'regular,' is defined by Webster as methodical, regular, according to established order. *Zulich v. Bowman*, 42 Pa. (6 Wright), 83, 87. * * *

"The word 'ordinary' is defined as common, usual, often recurring. *Chicago & A. R. Co. v. House*, 172 Ill., 601, 50 N. E., 151, 153.

"Johnson assigns to the word 'ordinary' the meaning of established, regular, common, usual. *Crenshaw v. Slate River Co.*, 6 Rand. [27 Va.], 245, 263."

*Midland Timber Co. v. Pegues*, 93 S. C., 82, 76 S. E., 32, 34: The meaning of the word "ordinary" is defined as follows: " 'Ordinary,' in the usual acceptation of the word, means 'common,' 'usual,' 'common occurrence,' 'usual practice.' "

In 4 R. C. L., 223, it is said: "A municipality is not bound to so maintain bridges as to make them absolutely safe; its obligation being merely to exercise ordinary care in keeping the bridges under its control in a safe condition for all usual and ordinary modes of travel and transportation of property over them."

*Ibid.* 239: "If, however, one transports across a bridge a load which exceeds the weight permitted by statute the insufficiency of the bridge does not give rise to any action."

9 C. J., 480: "As it is unnecessary that bridges shall be constructed to sustain unusual extraordinary, or unexpected loads, it follows that one who attempts to cross such a bridge with a load which is clearly of such nature, and which

would subject the bridge to an unusual strain, is guilty of contributory negligence. So, too, if a statute prescribes a maximum weight to which a bridge shall be subjected, an injured party ordinarily cannot recover if his load exceeds such maximum."

42 L. R. A. (N. S.), 1036: "A statute having prescribed the weight which might lawfully be transported across a toll bridge, if it appears that the plaintiff's load exceeded such weight, and thereby the bridge was broken down, with injuries to the plaintiff, he is prohibited from recovering for such injuries. *Dexter v. Canton Toll-Bridge Co.*, 79 Me., 563, 12 A., 547."

*Com. v. Allen*, 148 Pa., 358, 23 A., 1115, 1117, 16 L. R. A., 148, 33 Am. St. Rep., 830: "As a general rule, highways and bridges are constructed for ordinary use, in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed or by the passing of a very large and unusual weight. A township is not bound to do more than to so construct its bridges as to protect the public against injury by a reasonable, proper, and probable use thereof, in view of the surrounding circumstances, such as the extent, kind, and nature of the travel and business over them."

The following quotations are from English cases construing the terms "excessive weight" and "extraordinary traffic" in their general highway law and are found in 5 A. L. R. at page 770 *et seq*.

"The traffic is not the less extraordinary because it comes from timber grown on the adjoining lands, when the quantity hauled is unusual."

"Using traction engines to carry manure over a road used principally for ordinary farm traffic is 'extraordinary traffic.'"

"So it is 'extraordinary traffic' to employ a new plan of carting coal, taking a string of four or five carts at a time in the same track   *   *  ·  *   or to employ a new manner

of carting stone on the road in question, viz., by traction engines not usual there."

"Stone traffic, caused by the opening of a stone quarry, which had not been before carried over the particular road, is 'extraordinary traffic,' though there had been stone traffic over other roads in the vicinity."

"That the needs of the district demand motor buses will not prevent their traffic from being 'extraordinary traffic.'"

"A person by bringing in heavier and new kinds of vehicles cannot make the use of them ordinary traffic after a time, so that he can compel the authorities to provide for them as ordinary. * * * Nor can he make the hauling of bricks in heavy loads over an agricultural road not extraordinary. * * * And a quarryman was held liable for expenses where for seven years he had carted stone over a highway not before ordinarily used for that purpose."

"The standard is the ordinary traffic of the particular road, not the ordinary traffic of other roads in the district."

The appellant complains of a modification of the third request to charge. The request was as follows: "The burden is upon the plaintiff to prove that the load of the deceased, including the weight of the tractor, did not exceed the ordinary weight—the weight of usual loads and vehicles passing over the roads—and unless she has proven this by the preponderance or greater weight of the evidence, she is not entitled to a verdict from you, and you must find for the defendant."

The modification was: "I charge you that by adding: 'or the weight of such load as the county could reasonably anticipate would use the road.'"

We think that the request was entirely in accord with the terms of the statute; the modification inserted an element that does not appear therein, namely, that the test was a reasonable anticipation by the county of a use to which the bridge might be put. The question of reasonable anticipation might have entered if the defendant had been an or-

dinary tort-feasor, but not when it was defending a specific statutory liability, the test of which was correctly stated in the request. The error is emphasized by the charge complained of in the seventh exception: "It is the duty of the county to keep the bridges reasonably safe for the purposes for which the bridge is used."

The jury could not escape the conclusion that the county could reasonably anticipate the weight of its own machine, and, indeed, that it knew of it. There was error in thus holding the county to responsibility for more than the "ordinary weight" as prescribed by the statute.

In this connection the county officers cannot enlarge the county's liability under the statute by the purchase of a road machine of extraordinary weight. Such will not render its excessive weight, as compared with all else upon the county roads, as in this instance, "ordinary" within the terms of the statute. And the liability will not be increased by estoppel or otherwise by knowledge or acts of the officials. *Chick v. Newberry*, 27 S. C., 419, 3 S. E., 787; *Hill v. Laurens County*, 34 S. C., 141, 13 S. E., 318.

The judgment of this Court should be that the judgment of the Circuit Court be reversed and that the case be remanded to that Court for entry of judgment in favor of the defendant under Rule 27.