16502

JEFF HUNT MACHINERY CO. v. SOUTH CAROLINA STATE
HIGHWAY DEPARTMENT

(65 S. E. (2d) 260)

*Messrs. Smythe & Smythe,* of Charleston, *for Appellant,*

*Mr. T. C. Callison, Attorney General,* and *James S. Verner, Assistant Attorney General,* of Columbia, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondent,*

May 14, 1951.

STUKES, Justice.

There was a former appeal in this action against the State Highway Department for damages under section 5887 of the Code of 1942, to the report of which reference may be had. 217 S. C. 423, 60 S. E. (2d) 859. The specifications of alleged negligence were contained in paragraph eight of the complaint, as follows: "The damage to the said Diesel Generator Set was due to and caused by one or more defects in said ferry, which defects were the weakness of the chain

securing the flat to the bank, the lack of any other suitable means of properly securing the flat to the bank, and the lack of a suitable apron or runway to provide access from the ramp to the flat."

Upon trial the following quoted requests by plaintiff for instructions to the jury were refused:

"6. I further charge you that it has been held by the Supreme Court of South Carolina as follows:

" 'It must be known to every ferryman that the strain upon a chain when the fore wheels of a loaded wagon first strike against a flat to enter it is very great and that, therefore, he ought to be provided with a chain of great strength to support such a blow, but particularly when the descent from the bank to the flat is steep and considerable. Many flats to avoid this severe blow of the wagon wheels are provided with boards which let down and serve as a kind of bridge from the bank to the flat and which eases off much of the violent concussion with which the fore wheels impinge on the flat. Other modes are also adopted by ferrymen which go to show how sensible they are of the violent force with which a loaded wagon strikes against and enters a flat.'

"7. This is the law which was handed down by the Supreme Court in 1817, 133 years ago, and it has not been changed. I, therefore, charge you that if you find that the defendant failed to equip the ferry which is involved in this case with a chain of sufficient strength to hold it against the bank when the plaintiff was driving the machinery onto the flat or to equip the ferry with any other suitable means of properly securing the flat to the bank, such failure of equipment would constitute a defect in a state highway and if you further find that by reason of this failure of equipment, plaintiff suffered damage to its property, and that plaintiff did not bring about the damage by its own negligence and did not negligently contribute thereto, then the plaintiff would be entitled to recover for the amount of such damage as it shall have proved that it suffered up to but not exceed-

ing the sum of One Thousand Five Hundred ($1,500.00) Dollars, that being the limit fixed in the code section first above referred to."

The jury returned verdict for the defendant after which plaintiff's motion for new trial was denied and it has appealed upon a single exception, as follows: "The trial judge erred in refusing to charge the Plaintiff's sixth and seventh requests to charge, the error being that the gravamen of Plaintiff's action was Defendant's failure to provide the ferry in question with adequate means of securing it to the bank, by reason of which it slipped away from the bank and the accident occurred, and that Plaintiff had the right to have the court explicitly and particularly charge the jury in regard to the duty of a ferryman in that respect."

It is clear that the sixth request was properly refused. It was an excerpt from the closely divided opinion of the Constitutional Court in *Rutherford v. McGowen,* 1 Nott & McC. 17, decided in 1817. There were two sufficient reasons for the refusal. First, it would have constituted a charge upon the facts in contravention of section 26 of article V of the Constitution of 1895 simply because it was saying in effect that a specified delict was an act of negligence which, under the present practice, is the prerogative of the jury. *Peay v. Durham Life Ins. Co.,* 185 S. C. 78, 193 S. E. 199. And it referred to facts of which there was no evidence. There was no steep descent to the flat; and in this case the truck or tractor, the first unit of the rig, made it safely onto the ferry; the mishap followed the attempted entry of the heavily loaded trailer. The following statement which is well-supported by the record (and to which no exception was taken) is found in the order refusing new trial: "The testimony in the case was conflicting as to whether the chain actually parted, or whether the post to which it was fastened came up out of the ground or whether the timber to which it was fastened onto the ferry came loose from the ferry. There was also some evidence that the chain merely slipped and did not part."

Reference to the statute, section 5887 of the Code, shows the limitations upon the right of action here asserted. Subsection (2) provides that the plaintiff must allege and prove that it did not bring about the injury by its own negligence or negligently contribute to it. The truck and trailer and load of machinery weighed in all about 28,000 pounds. Its wheel base was longer than the body of the ferry. The highway was a remote, unpaved one which terminated on the thinly populated coastal island which was reached by means of the little ferry. The crossing was attempted, with admitted long-standing misgivings, without notice to any officer or employee of the Highway Department except the two negro boat hands (and that not in advance) who protested in vain that the ferry would not take the projected load. All of these facts in evidence were relevant considerations for the jury in finding the presence or absence of neglect by the respective parties to the action.

In the second place, the law relied upon by appellant, contained in the old cases, was developed with respect to privately operated public ferries. Liability of the proprietors of them was akin to that of other common carriers, as the cases show and say. *Cook v. Gourdin,* 2 Nott & McC. 19. *Harrington v. Lyles,* 2 Nott & McC. 88. It was defined as absolute except for loss caused by act of God or public enemy. Negligence was not essential.

The liability of the State, under the enabling statute, Code, sec. 5887, which affords appellant its sole right to sue, is something else again and manifestly less comprehensive than that of a common carrier. The base of liability of counties with respect to their highways (which is substantially the same as that of the State as to its highways) was rather fully stated in *Chewning v. Clarendon County,* 163 S. C. 506, 161 S. E. 777, 778, by way of approval and report of the instructions to the jury in the trial of that case, which included the following, there related to a bridge but no less applicable to a ferry: "I charge you that the county, in building bridges, and maintaining the bridges

of the county, it is the duty of the county to keep the bridges reasonably safe for the purposes for which the bridge is used.

Now, the measure of the county's duty is ordinary care to provide such a bridge that is reasonably safe for the traffic that may reasonably be anticipated, having due regard to the character of the travel and the purpose for which the high-way may be used and the danger. The county, in building a bridge at the place they build it, must take into consideration the purpose for which the bridge is to be used. They have got to provide a bridge that is reasonably safe for the use of the public, considering the sort of traffic that crosses it, and the ordinary travel to be anticipated. One place may require a stronger bridge than others. It must be reasonably safe for the traffic that may reasonably be anticipated. Not only to build it reasonably safe, but make an inspection of it and keep it in a reasonably safe condition for the use of the traveling public. It is the duty of the public, in using the bridge, they are under a duty to use ordinary care in the manner in which they use the bridge, and to take into consideration the nature of the load that they carry. They have got to use ordinary care themselves."

The instructions to the jury there under review also contained some contrast of the law there (and here) relevant and that pertinent to an action by an injured passenger against a common carrier. 163 S. C. at page 511, 161 S. E. 777.

The seventh request to charge was closely connected with the sixth, as shown in the above quotation of them. The first of it contains a similar, objectionable charge on the facts. Such parts of it as are unobjectionable on that ground were fully and fairly covered by the general charge to the jury, and omission of the repetition of them cannot be properly said to have been prejudicial to appellant. Besides, it is too well established to require the citation of authority that a request which contains error need not be dissected by the court in order to extract the unobjection-

able part and grant it. S. C. cases in 32 S. E. Dig. and Supp., Trial, 261.

Considered as a whole, as it must be, we are of opinion that the charge to the jury was fair and just and free from error.

The exception is overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR, and OXNER, JJ., concur.