305 P.2d 1067

**Marvin E. ADDISON, Plaintiff-Appellee,**

v.

**George D. TESSIER, Defendant-Appellant.**

No. 6112.

Supreme Court of New Mexico.

Jan. 10, 1957.

Rehearing Denied Jan. 31, 1957.

Martin A. Threet, Albuquerque, for appellant.

Joseph L. Smith, Henry A. Kiker, Jr., Heister H. Drum, Albuquerque, for appellee.

LUJAN, Chief Justice.

This is an action for the recovery of damages for personal injuries. Plaintiff had judgment and defendant appeals. The parties will be referred to as they appeared in the district court.

Plaintiff, was an employee of defendant, engaged in the manufacture, installation, erection, maintenance, repair and design of displays or signs involving the use of electric lines in conjunction with gas-filled glass-tubes, commonly known as "neon signs."

He had been directed by his superior to remove a neon sign from the premises located at 815 Fourth Street, N. W., in Albuquerque, New Mexico, and while so doing, in company with another employee of defendant, several bricks from the fire wall of the building fell upon him causing him to fall from a ladder, on which he was working, to the sidewalk inflicting the injuries complained of.

It is not claimed that the verdict rendered by the jury was excessive, and therefore, a statement need not be made as to the nature and extent of plaintiff's injuries, or as to his earning capacity before the accident.

Under assignments of error one and two the defendant urges that the court erred (1) in overruling his motion to dismiss plaintiff's complaint; and (2) in striking his third, fourth and fifth affirmative defenses, to-wit: contributory negligence, assumption of risk and want of ordinary care.

Under these assignments of error defendant contends that the plaintiff cannot maintain this action, because his remedy under the Workmen's Compensation Act is exclusive. Plaintiff alleged in his complaint that the defendant failed, neglected and refused to comply with the provisions of said act, including the provisions relating to insurance.

The controversy has its setting in a background of law and fact. Our Workmen's Compensation Act is of an elective type. The legislature has implemented a purpose to induce employers and employees to elect to operate under its provisions by weakening the position of a rejecting employer or employee in actions wherein an employee seeks to recover damages for personal injuries or death.

At the very outset we may observe that the apparently conflicting provisions of the act render the solution of the problem difficult. Defendant's theory is that all employers subject to the act are presumed to have accepted the provisions thereof; that the only method open to said employers who are subject to the act to exempt themselves from it is by filing with the clerk of the district court for the county in which

such workmen are employed, a notice in writing to the effect that they elect not to accept the provisions of the act; that all employees subject to the act are conclusively presumed to have accepted the provisions thereof, unless such employees have at the time or prior to entering into their contracts of hire with such employers, given notice in writing to their employer and such clerk of the district court, electing not to become subject to the provisions of the act; and that the rights and remedies given the employees are conclusive. That in the instant case the plaintiff became bound by the provisions of the act on account of his failure to give the required notice not to become subject to the act.

Plaintiff's theory is that an employee is conclusively presumed to have accepted the provisions of the act, *only* if his employer is subject to the provisions thereof and has *complied* with its requirements, *including insurance*, and that no presumption that he was bound by the act could have arisen prior to such compliance.

Section 59–10–4 of 1953 Compilation, provides:

* * * "Every employee shall be conclusively presumed to have accepted the provisions of this act * * *, if his employer is subject to the provisions thereof and *has complied with its requirements, including insurance*, and, unless said employee has, at the time of or prior to entering into his contract of hire, express or implied, with such employer, given notice in writing to his employer and to such clerk of the district court, electing not to become subject to the provisions of this act * * *." (Emphasis supplied.)

Section 59–10–3 of 1953 Compilation, provides:

"Every such employer * * * shall file in the office of the clerk of the district court for the county in which such workman is, * * * to be employed, * * * good and sufficient undertaking in the nature of insurance or security for the payment to any and all such injured workmen, * * * *except* that in case any employer *shall* be able to show to the satisfaction of such judge that he, or it, is financially solvent, and that the giving of such security is unnecessary, such judge shall issue thereto a certificate to that effect, which shall also be filed with said clerk and thereupon such employer shall be excused from filing such undertaking otherwise required until the further order of such judge, if any, directing otherwise. * * *" (Emphasis supplied.)

The record discloses that the defendant had not exempted himself from the operation of the Workmen's Compensation Act, therefore he is conclusively presumed to have accepted its provisions. Section 59–10–4, 1953 Compilation. If the de-

fendant had been carrying insurance, or had relieved himself from so doing, as required by the act, it would have been conclusively presumed that the plaintiff had himself accepted the provisions of the act and this action could not have been maintained because in that case the remedy under said act is exclusive. Section 59–10–4, 1953 Compilation. But the defendant did not carry workmen's compensation insurance, nor had he relieved himself of such requirement as required by § 59–10–3, supra. Therefore defendant was not operating under the provisions of the act, and plaintiff, under such circumstances, could not have been conclusively presumed to have accepted the provision thereof. Consequently, this action at law lies in favor of plaintiff and against the defendant, and the defenses enumerated in § 59–10–5, were not available to defendant. See, Schneider, Workmen's Compensation Laws Vol. 1, § 91 pp. 230, 231.

The case of Thompson v. Dale, 59 N.M. 290, 283 P.2d 623, 628, relied upon by appellant as authority for his contention that he is entitled to the common-law defenses of contributory negligence, assumption of risk and the fellow servant doctrine, is not in point or applicable to the instant case. There we were dealing with an injury sustained by a farm and ranch laborer while in the course of his employment. Justice Sadler, speaking for the court said:

"* * *. Perhaps, before proceeding further, we should dispose of a contention made by plaintiff that defendants are denied the right to rely upon the common law defenses of assumed risk, contributory negligence and fellow servant by a certain section of the Workmen's Compensation Act. Of course, the one last mentioned, that of fellow servant, is excluded from consideration since there is nothing in the evidence to warrant that defense. The only occasion for even mentioning it is that it is listed along with the other two defenses which counsel for plaintiff say are denied to defendants under the language of 1953 Comp. § 59–10–5. * * *

"It seems clear to us that the questioned section can have no application to an occupation that is excepted from the Act. We have held it does not apply to employers of farm and ranch labor. Koger v. A. T. Woods, Inc., 38 N.M. 241, 31 P.2d 255. The statute, 1953 Comp. § 59–10–4, expressly excepts from its provision certain employers. It reads:

"'This act shall not apply to employers of private domestic servants or of farm and ranch laborers.'

"Decided cases under similar provisions in the Workmen's Compensation laws of other states support the conclusions we have reached on this sub-

ject. [Citing text writers and cases from other states.]

"Having concluded that the defendants are not barred by the questioned language of the Workmen's Compensation Act from relying on the common law defenses of contributory negligence and assumed risk, * * *."

We conclude that the trial court did not err either in overruling the defendant's motion to dismiss plaintiff's complaint or in striking his third, fourth and fifth affirmative defenses.

The defendant's third claim of error relates to the trial court's refusal to direct a verdict in his favor. This motion is based upon the defendant's theory that both the appellee and defendant were bound by the Workmen's Compensation Act. But the appellee could not be conclusively presumed to have accepted the provisions of the act, since the defendant had not complied with its requirements, including insurance. Until there is a compliance with the requirements of the act relating to insurance by the employer, then, no presumption arises that the employee is bound by the act.

In passing on a motion for a directed verdict the court must view the plaintiff's evidence in the most favorable aspect, indulging in all reasonable inference to be drawn from plaintiff's evidence and disregarding all unfavorable testimony and inferences. Chandler v. Battenfield, 55 N.M.

361, 233 P.2d 1047. The uncontradicted testimony of Rubie V. Krohn, clerk of the district court, shows that the defendant had not complied with the provisions of the act relating to insurance. The court did not err in denying the motion for an instructed verdict.

The defendant's fourth claim of error relates to the refusal of the trial court to give his requested instruction No. 1, which reads in part as follows:

"In this case, you are instructed, should you find from the evidence that neither the plaintiff nor the defendant, it being admitted that they were both subject to the provisions of the Act, at the time of the accident complained of, did not file a written notice with the Clerk of the District Court that they elected not to become subject to the provisions of the Workmen's Compensation Act, then both plaintiff and defendant are conclusively presumed to have accepted the provisions of the Act and the plaintiff is not entitled to maintain this suit, and your verdict should be for the defendant."

This instruction tells the jury to return a verdict in favor of the defendant if it only finds that plaintiff did not give the required notice in writing to the defendant and to the clerk of the district court, electing not to become subject to the provisions of the act, even though it found that the

defendant had not complied with the provisions of the act relating to insurance. We are satisfied that the court properly refused this instruction as not being a correct statement of the law, and it was not necessary for the trial court to separate the possible good from the bad. See, Miles v. Lavender, 9 Cir., 10 F.2d 450; Jeff Hunt Machinery Co. v. South Carolina State Highway Department, 219 S.C. 340, 65 S.E.2d 260; Schultz v. Shirley, 189 Or. 363, 220 P.2d 86; Powell v. Langford, 58 Ariz. 281, 119 P.2d 230; Huggans v. Southern Pac. Co., 92 Cal. App.2d 599, 207 P.2d 864; Ferguson v. Ashkenazy, 307 Mass. 197, 29 N.E.2d 828.

The defendant's fifth claim of error relates to the refusal of the trial court to give the second paragraph of his requested instruction No. 3, which reads as follows:

"You are instructed that it is the duty of the master to use reasonable care to furnish his servant a safe place to work on premises over which the master has complete control and dominion; on the other hand, if the master is an independent contractor and is employed to do a specific job upon premises belonging to a third person, and over which the master has no control or dominion, then no duty rests upon the master to undertake to examine the premises to determine whether there are any hidden defects or that the premises are otherwise in an unsafe condition since he is not an insurer of the safety of his servant while working on the premises belonging to a third party which the master has no control.

"In this case should you find from the evidence, that the defendant was an independent contractor and was employed to remove a neon sign from the front of the building at 815 4th Street, NW, Albuquerque, New Mexico, and sent the plaintiff, along with other employees, to remove such neon sign, and in the process of removing the neon sign the front of the building to which such sign was attached, or a portion thereof, gave way and brick from the fire wall of such building fell on the plaintiff, knocking him from the ladder to the pavement, which resulted in plaintiff's injuries, if any, and the falling of the brick from the top or front, of the building and striking the plaintiff was the proximate cause of plaintiff's injuries, then your verdict should be for the defendant."

It was plaintiff's theory throughout the trial that the negligence of Beaumont, an employee of the defendant, in attaching the neon sign to the mast from which it hung, when the guy wire which supported the mast was attached only to the fire wall and not to the roof of the building, as it should have been, and his standing upon said sign so attached, was what proximately caused the bricks of the fire wall to fall on plaintiff. The testimony of the expert witnesses

who testified at the trial of this case was unanimously to the effect that it was hazardous and negligent to attach a sign to a mast which was supported by a guy wire fastened to a fire wall, and that such a practice was likely to cause the fire wall to collapse.

Raymond Beaumont, an employee of defendant, testified as follows:

* * * "Q. Did you observe when you erected that sign, where the guy wire at the top of the mast was attached? A. Yes, sir, it was attached—

"Q. Where was it attached? A. It was attached to the firewall.

"Q. And it was attached to the firewall on July 31, 1953, also, sir? A. Well, I don't follow you there, sir.

"Q. You do recall that when you erected the sign, the guy wire was attached to the firewall? A. Yes, the mast and the guy wires were all attached to the firewall at the time I erected the sign.

"Q. They were also attached to the firewall at the time this incident occurred and you were taking down the sign? A. Yes.

* * * * * *

"Q. And were you on the sign itself doing that work? A. Yes, sir.

"Q. On what part of the sign were you? A. On the front end of the sign.

"Q. Was the sign still attached to the building at that point? A. Yes, sir.

* * * * * *

"Q. What occurred, after Mr. Addison climbed up the ladder to do the disconnecting, and after you had climbed on top of the sign? A. Well, I was taking of that particular bolt, and the sign jumped on me, and after I got ahold of myself, well, the firewall had fallen and Addison was on the sidewalk.

* * * * * *

"Q. And what do you recall having seen immediately after the sign jumped and you looked around? A. Well, I saw all that brick of the firewall was laying on the sidewalk."

 The first paragraph of the instruction fairly, correctly and sufficiently stated the rule of law applicable to the issues of the case, and the court did not err in refusing to give the second paragraph of the requested instruction, for it would have directed the jury to return a verdict for the defendant if they found that the plaintiff's injuries resulted from the falling of bricks from the top or front of the building, regardless of what they found caused the bricks to fall from the fire wall.

The defendant's sixth claim of error is based upon the denial by the trial court of

his motion for judgment non obstante veredicto or in the alternative for a new trial.

Under the first proposition defendant contends that he is entitled to judgment notwithstanding the verdict because of the alleged prejudicial misconduct of counsel for plaintiff.

Dr. A. B. Stewart, a psychiatrist, called to the stand by counsel for plaintiff testified:

* * * "Q. And doctor, at my request did you examine Mr. Marvin Addison, the plaintiff, in this case? A. Yes, sir.

"Q. And when did you examine him, doctor? A. I examined him in my office on the afternoon of the 24th of this month.

"Q. About how much time have you spent doing this examination? A. I had him about two hours and a half that first day and I had him back yesterday an hour and a half besides."

The nature of the alleged misconduct of counsel for plaintiff is as follows:

"Q. Doctor, in connection with your testimony, can you testify freely with the plaintiff here or would you prefer to have him leave the room?

"Mr. Dazzo: I am sorry, I didn't hear your question, Joe. A. I don't think that he'd enjoy it very much.

"Mr. Smith: My question was whether he could testify freely with this man present in the room or whether he would think it to the best if the plaintiff were to leave the room? A. Well, I'd feel more free if he weren't here, that is true.

"Mr. Smith: If you don't mind, with the Court's permission, I wish that he would absent himself from the Court Room.

"The Court: Any objection on the defendant's part?

"Mr. Threet: I don't understand the procedure.

"The Court: I have never been confronted with it myself before. Do you think that he'd be embarrassed, is that the point?

"Mr. Smith: I will ask the doctor about that. What is your feeling, doctor? A. Well, he appreciates things pretty well today, as to what is going on today.

"Q. Well, do you believe, doctor, if you were to testify as to your opinion and facts in the case that it might be detrimental to him or would you prefer to have him leave the room?

"Mr. Threet: If the Court please, we believe this is just a show to try to create an impression on the jury and is a pure fake to—

"Mr. Smith: I assure the Court there is no intent to do such as—

"Mr.Threet: The plaintiff knows what the doctor is going to testify to and—

"Mr. Dazzo: Now we object to any—

"Mr. Kiker: If the Court please, we'd like the record to show that we move at this time that the Court strike the remarks of Judge Threet and admonish the Jury not to consider them, they constituting a personal matter with regard to counsel and have nothing to do with the facts in this case. Further, we'd like to ask that Mr. Addison leave the Court Room on the ground that there is no requirement that he be here during the proceeding.

"Mr. Dazzo: If it please the Court, I'd like to make a motion. We'd like the jury to be removed so that I might make a motion on the matter.

"The Court: All right, we will take a ten minute recess.

"Whereupon, the following proceedings were had in the absence of the jury:

"Mr. Smith: At this time, if the Court please, supplementing Mr. Kiker's motion in connection with Judge Threet's comment, we believe that the discussion in the presence of the Jury, that the removal of the plaintiff from the Court Room is a pure fake is highly prejudicial unless the Court admonishes the Jury to the contrary.

"The Court: We will hear Mr. Dazzo's motion.

"Mr. Dazzo: At this time we move the Court to declare a mistrial on the grounds that the statement made in this Court Room is prejudicial to the cause of this defendant.

"The Court: What was that again?

"Mr. Dazzo: The remarks, the actions and the incident requesting the plaintiff to leave the Court Room in the presence of the jury were prejudicial to this defendant. We ask a new trial."

* * *

After argument before the court in the absence of the jury, the court made the following rule:

"The Court: Well, the Court feels that probably the scales are about evenly balanced if any erroneous impression was made on the part of the plaintiff, it was counter-balanced by the remarks of Judge Threet made at the same time. The Court is going to overrule the motion for a mistrial and will admonish the jury on the matter and I think that the plaintiff had better remain in the Court Room for the balance of Dr. Stewart's testimony, just to avoid any erroneous impression from now on out, insofar as the jury is concerned."

After the jury returned into court they were instructed:

"The Court: The Court will admonish and instruct the jury to draw no inferences whatsoever from the events that took place before the recess, that is, the request that the plaintiff be allowed to leave the Court Room and the question of Dr. Stewart in that regard or the remarks of Judge Threet as to the possible purpose of that."

A motion to declare a mistrial is addressed to the sound discretion of the trial judge, and the refusal thereof because of an objectionable question propounded to a witness by counsel is reviewable for abuse of discretion only.

Whether the question propounded to Dr. Stewart by plaintiff's counsel constituted prejudicial misconduct preventing a fair trial is a question of fact. The trial judge was in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision.

It is difficult to see how the question propounded to Dr. Stewart, a psychiatrist, who had spent four hours examining the plaintiff, if he could testify freely with the plaintiff present in the court room or would he prefer to have him leave the room, could have had any particularly prejudicial effect on the jury, and, to say the least, the record affords no basis for this court to say that the trial judge abused its discretion in refusing to declare a mistrial. See, Hulburd v. Worthington, 57 Cal.App.2d 477, 134 P.2d 832.

Under the second proposition the defendant contends that he is entitled to a new trial because of the alleged misconduct on the part of the jury. The nature of the misconduct is as follows:

After the jury had been instructed, and before argument of counsel, the following request was made of the court:

"Mr. Smith: And now, if the Court please, before commencing with the argument, I would like to offer all the exhibits to the jury for examination, if there is no objection. I believe, possibly through my own negligence that the jury did not get to see all the exhibits when they were received in evidence."

There was no objection made to this request by counsel for defendant.

"The Court: Very well.

"(Whereupon, all the exhibits were presented to the jury for examination, following which period of time counsel approached the bench and conferred with the Court.)

"The Court: (To the jury) Do you think you've had enough time to view the exhibits? Would you please step out for a moment."

"(Whereupon, out of the presence of the jury, the following proceedings were had:)

"Mr. Dazzo: If it please the Court, at this time we would like the Court to show in the record that the exhibits in this case were presented to the jury, and that the jury, as such, discussed among itself the exhibits presented in the jury box here in the presence of the Court, and not in the jury room—

"Mr. Smith: If the Court please, we object to that.

"Mr. Dazzo: (Continuing)—before this case was submitted to the jury and the jury were permitted to pass into their jury room.

"Mr. Smith: We object to the statement of counsel that the jury discussed the exhibits among themselves. Secondly, we object to the motion at this time, since it is not timely made, not having been made until the examination had been completed by the jury, the Court having asked the jury if they had completed the examination.

"Mr. Dazzo: I request the Court certify in the record those facts.

"Mr. Smith: There is no showing as to what they discussed.

"The Court: Let the record show that at the request of plaintiff's attorney, and before the argument of counsel commenced, that the Court permitted the jury to re-examine all of the exhibits. This was done largely in view of the fact that in the last case, as the jury left the room at the conclusion of the case, they wanted to take the exhibits with them, and the Court felt that they probably hadn't adequately examined the exhibits before. That was the thing that actually the Court considered in permitting this to be done at this time. The Court will further state it was evident there was whispering going on among the jury, although it may have been passing the time of day. It is true in some instances two jurors were looking at the same exhibit at the same time. If counsel wish, why we can interrogate certain jurors and see what was discussed.

"Mr. Dazzo: No, sir. I would like to make a motion. I move, at this time, the Court declare a mis-trial, and we be granted a new trial for the reason that the action of the jurors in discussing these exhibits are prejudicial to this defendant.

"The Court: Overruled."

The principal complaint of counsel for defendant is not that the court erred in permitting the jury to examine the exhibits, which had been introduced in the case, as requested by counsel for plaintiff but that after the jury were permitted to do so they conferred with each other and discussed the case before it was finally submitted to them.

The rule of law is well settled in this jurisdiction that a motion for a new trial is addressed to the discretion of the court and will be reviewed only for a clear abuse of discretion. Cienfuegos v. Pacheco, 56 N.M. 667, 248 P.2d 664. We cannot say from the record that there was such abuse of discretion as would require a reversal of the case and we conclude that the refusal of the motion was proper.

In the case of Wilson v. California Cab Co., 125 Cal.App. 383, 13 P.2d 758, 759, it was contended, as it is in the instant case, that the jury had been guilty of misconduct when, during a five minute recess, after all the evidence was in, but before the case was finally submitted to the jury, a group of jurors gathered around a map which was an exhibit in the case, and discussed it, and made measurements upon it. The court said:

"Appellants contend that the court erred in denying defendants' motion for mistrial and also defendants' motion for a new trial on the ground of misconduct of the jury in that they discussed the case before it was finally submitted to them. During a five-minute recess, after all the evidence was in and both parties had rested, a number of jurors were noticed grouped around the map, (to which reference has heretofore been made in this opinion), and to which they were pointing or measuring with a ruler, at the same time conversing among themselves. No one heard what was said by the jurors, and the map had been admitted in evidence and its correctness had been stipulated to. Assuming that this was a technical violation of the court's instruction to the jury not to discuss the case until it was finally submitted to them, it is not shown that it could have been prejudicial to the appellants."

See, also Maulsbury v. Shure, 170 A. 41, 12 N.J.Misc. 137; Washington Times Co. v. Bonner, 66 App.D.C. 280, 86 F.2d 836, 110 A.L.R. 393; Higgins v. Dean Gas Engine & Foundry Co., 140 Ky. 44, 130 S.W. 800.

In the case at bar no one heard what was said by the jurors or what they discussed. Furthermore, the court offered counsel for defendant the opportunity to interrogate certain jurors as to what was said or discussed by them, but this offer was declined.

Finally it is urged that the trial court erred in giving its instruction No. 15–A. The defendant, by his answer, set up several affirmative defenses, among them is the following:

"Comes the defendant and, for his first affirmative defense, alleges that the plaintiff is now estopped to pursue his remedy under an action of common law negligence against the defendant for the reason plaintiff has accept-

ed compensation, medical expenses and hospital care under the Workmen's Compensation Act of the State of New Mexico."

Instruction No. 15–A reads as follows:

"You are instructed that before you may find that the plaintiff is estopped to maintain his suit for damages by reason of having accepted the benefits of the Workmen's Compensation Act, if you find that he did so, you must find; first, that he had a full knowledge of the nature of both his right to Workmen's Compensation, and his right to maintain an action for damages, and, second that he manifested an intention to abandon his right to an action for damages in favor of accepting Workmen's Compensation benefits; and if you find from the evidence that the plaintiff, Marvin Addison, did not know that he had a right to an action for damages against the defendant, George Tessier, at the time that he accepted Workmen's Compensation benefits, if you find that he did so, then you must find that he is not estopped from maintaining this suit for damages."

■ In order to create estoppel by acceptance of benefits it is essential that the person against whom estoppel is claimed, should have acted with full knowledge of the facts and of his rights, and that the party claiming estoppel should have been without knowledge or means of knowledge of the facts on which he based his claim and that he was misled to his prejudice.

Whether the plaintiff had full knowledge of the nature of both his right to workmen's compensation benefits, and his right to maintain an action for damages; and whether he abandoned his right to an action for damages in favor of accepting workmen's compensation benefits; and whether he knew or not that he had a right to an action in damages at the time that he accepted workmen's compensation benefits, if he did so accept them, are all questions of fact to be determined from the evidence in reference thereto, and the issues were, therefore, properly submitted to the jury.

■ The defendant at all times knew that he did not carry workmen's compensation insurance and had not relieved himself of so doing as provided by the act; therefore, he is not in a position to invoke the doctrine of estoppel as a bar to plaintiff's cause of action.

It follows from what has been said the judgment should be affirmed.

It is so ordered.

McGHEE and COMPTON, JJ., concur.

SADLER and KIKER, JJ., not participating.