## MILES v. LAVENDER.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1926. Rehearing Denied March 8, 1926.)

No. 4604.

1. Negligence ⚖️101—Employee's contributory negligence no bar under Arizona Employers' Liability Act, unless sole proximate cause of injury.

Where employee's occupation was hazardous, within Arizona Employers' Liability Act (Civ. Code 1913, par. 3154), it was duty of court to submit case to jury, though evidence tended to show that employee's negligence was proximate cause of his injury, provided it was not sole proximate cause, in view of paragraph 3159.

2. Negligence ⚖️136(31)—Whether negligence of drag line machine operator was sole cause of injury, so as to bar recovery under Arizona Employers' Liability Act, held for jury.

In action under Arizona Employers' Liability Act for injuries to drag line machine operator, caught by curtain which became entangled in moving shaft, whether employee was negli-

gent, and such negligence was sole cause of accident and resulting injury, *held* for jury.

**3. Master and servant ⚖️351—Option to accept compensation under Arizona law not made until necessity arises.**

Under Arizona Workmen's Compensation Law (Civ. Code 1913, par. 3176), option of injured employee to accept compensation or pursue other remedy is not made until necessity arises and suit has been instituted by employee to enforce one of remedies saved to him by Const. Ariz. art. 18, §§ 7, 8.

**4. Master and servant ⚖️409½, New, vol. 7A Key-No. Series—Election under Arizona Workmen's Compensation Law held for jury.**

In employee's action for injuries, whether paper which he signed, constituting an election to take under Arizona Workmen's Compensation Law, but which he understood to be something entirely different, was binding, *held* for jury.

**5. Election of remedies ⚖️7(1)—When election of remedies made stated.**

One is not put to an election of remedies until he does some decisive act with full knowledge of nature of inconsistent rights that are his, and of necessity of choosing between them.

**6. Release ⚖️24(2)—Release could not be avoided without restoring consideration if signed with full knowledge of its terms, but might be disregarded if employee was deceived as to its contents.**

If employee signed release with full knowledge of its terms and with intention to make election to take compensation for injury, he could not avoid release without restoring consideration; but if he signed without knowledge and intention to enter into release and was deceived as to its contents, no contract existed, and instrument might be disregarded in an action at law.

**7. Master and servant ⚖️251—Injured employee, electing to sue under Arizona Employers' Liability Act, need not tender back payment received on signing election to take compensation.**

Under Arizona Employers' Liability Act (Civ. Code 1913, par. 3160), providing that, in action by employee, any sum paid by employer on account of injury may be set off, employee was not required to tender back a sum received on his signing election to take under Compensation Law, which he understood to be something entirely different.

**8. Trial ⚖️260(8)—Requested instruction held properly refused, in view of court's instructions and evidence.**

Requested instruction that, if injured employee had opportunity to read purported release and failed to do so, release thereby became as binding on him as if he had read it, *held* properly refused, in view of court's instructions and evidence that employee was deceived by agent, who told him instrument was a receipt.

**9. Trial ⚖️261—Court justified in refusing entire instruction, where part thereof incorrect.**

Court was not required to separate correct portion from incorrect portions of requested instruction, but was justified in refusing entire instruction.

**10. Costs ⚖️222—Interest properly allowed in employee's action for injuries from date of filing of complaint.**

In employee's action for injuries under Arizona Employers' Liability Act, interest was properly allowed from date of filing of complaint.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Action by John E. Lavender against Charles Miles. Judgment for plaintiff (4 F. [2d] 161), and defendant brings error. Affirmed.

John Ralph Wilson, of San Francisco, Cal., for plaintiff in error.

John H. Martin, of Tucson, Ariz., and R. H. Cross and Arthur H. Brandt, both of San Francisco, Cal., for defendant in error.

Before HUNT, RUDKIN, and MORROW, Circuit Judges.

HUNT, Circuit Judge. Writ of error to review a judgment upon a verdict in favor of Lavender against Miles for damages for injuries received by Lavender while operating a drag line machine in Arizona. The action was brought under the Arizona Employers' Liability Act. Paragraph 3153 et seq., Civil Code of Arizona.

Defendant denied negligence, pleaded knowledge of the risks, and alleged that after the accident Lavender agreed to accept full compensation for injuries as provided by the Arizona Workmen's Compensation Law (Civil Code 1913, pars. 3163–3173), and that pursuant to the terms of the agreement Lavender had accepted four drafts, aggregating approximately $225, and thereafter had repudiated the agreement and declined to accept further payments.

The first question is whether the court erred in overruling a motion for an instructed verdict, upon the ground that the evidence showed that defendant was not guilty of negligence, but that plaintiff was injured solely by reason of his own negligence.

Lavender, an employee of Miles, was operating the machine, on which there was a canvas curtain dropping from the roof back of the operator and down below the platform or floor board on which the operator's feet rested; the object being to afford protection to the operator against windy or bad weather. Attached to the bottom of the canvas was a piece of timber, one by four inches,

which extended across the width of the curtain, thus ordinarily affording sufficient weight to the curtain to hold it down in its proper place. On the morning of the accident Lavender found the curtain down when he went to work, and he let it remain so. While he was operating the machine, the curtain was blown by the wind against the side of the machine, where it caught in an oil hole (from two to four inches in diameter) in which was the end of a moving shaft. The curtain became entangled in the shaft, caught Lavender by the left arm and shoulder, and very seriously injured him. Lavender, though experienced in operating such machines, had worked only four days upon that particular one. On cross-examination he testified that the curtain was not provided with any fasteners for holding it down to the runway; that the one by four inch timber nailed at the back of the lower edge of the canvas answered as a weight, and held the curtain down in position below the runway. We quote from the cross-examination:

"Q. Was there any way of fastening that one by four, or the bottom of the curtain, to the runway? A. There was no way.

"Q. Had you ever examined it to see? A. I never examined it.

"Q. Had you ever operated that machine with the curtain down? A. Yes; and the man before me had been operating it all night.

"Q. Had you ever operated it before with the curtain up? A. Yes, sir.

"Q. How did you fasten the curtain up? A. You took and rolled it up like a window shade.

"Q. And fastened the top with straps? A. Something similar to that."

[1, 2] The Arizona Employers' Liability Act (Civ. Code 1913, par. 3154) provides that in all hazardous occupations an employer shall be liable for the injury caused by any accident due to a condition or conditions of such occupation of any employee in the service of such employer in such hazardous occupation in all cases in which such injury of such employee shall not have been caused by the negligence of the employee injured. In Consolidated Smelting Co. v. Egich, 22 Ariz. 543, 199 P. 132, after defining the design of the act, the court said: "It follows, therefore, that the negligence of the employer in failing to furnish the employee a safe place to work, or safe tools and implements with which to work, is not the ground upon which his liability is based, inasmuch as he is liable even though he may furnish the employee a safe place to work and safe tools and implements with which to work, if, notwithstanding, the employee is injured or killed by an accident due to a condition or conditions of the occupation."

As there can be no doubt that Lavender's occupation at the time of his injury was hazardous, within the meaning of the statute, it was the duty of the court to submit the case to the jury, even though the evidence tended to show that Lavender was negligent, and that his negligence was the proximate cause of his injury, provided such negligence was not the sole and proximate cause of his injury. Furthermore, paragraph 3159 of the Civil Code of Arizona (section 7, Employers' Liability Act, supra) provides that the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee.

In Young Mines Co. v. Blackburn, 22 Ariz. 199, 196 P. 167, the court said: "The moment it is apparent that the negligence of the employee is not the sole cause of the injury, the right to recover in some amount exists; the extent of the damage being, under proper instructions, for the jury." And in Superior & Pittsburg Copper Co. v. Tomich, 19 Ariz. 182, 165 P. 1101, 1185, the court said: "Nothing less than the sole negligence of the employee injured will bar an action based on the statute for damages." To our minds the decisions cited make it clear that it was for the jury to say whether there was any negligence on the part of Lavender, and, if there was, whether such negligence was the sole cause of the accident and resultant injury. Arizona Employers' Liability Cases, 250 U. S. 400, 39 S. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537.

The next question is whether Lavender was barred from recovery under the Employers' Liability Act, already referred to, for the reason that he elected to pursue a remedy under the Workmen's Compulsory Compensation Law.

The Constitution of Arizona (article 18, § 7) provides that to protect all employees in hazardous occupations the Legislature shall enact an Employers' Liability Law making all employers liable for injuries caused by any accident due to a condition or conditions of such occupation, in all cases in which such injury of such employee shall not have been caused by the negligence of the employee injured. Section 8 of the same

article provides that the Workmen's Compulsory Compensation Law shall require compensation to be paid to a workman by his employer, if in the course of such employment the workman is injured through an accident arising out of such employment, or is caused in whole or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of the employer or any of his agents or employees to exercise due care, or to comply with any law affecting such employment, "provided, that it shall be optional with said employee to settle for such compensation, or retain the right to sue said employer as provided by this Constitution."

The Workmen's Compulsory Act provides that, in case the employee shall refuse to settle for compensation as provided in section 8 of article 18 of the Constitution, and chooses to retain a right to sue the employer as provided by section 7, supra, he may so refuse to settle and may retain said right. Section 14 of the act (Civ. Code 1913, par. 3176) has a proviso to the effect that if, after the accident, the employer or the workman shall refuse to accept compensation, or to proceed or rely upon the provisions of the act for relief, then the other may pursue his remedy or make his defense under other existing statutes, "the state Constitution, or the common law, except as herein provided, as his rights may at the time exist. Any suit brought by the workman for a recovery shall be held as an election to pursue such remedy exclusively."

[3] As construed by the Supreme Court of the state in Consolidated Arizona Smelting Co. v. Ujack, 15 Ariz. 382, 139 P. 465, section 14 contains a plain declaration that "the employee is at liberty to pursue any of the remedies provided by law until he adopts one by instituting a suit for redress, when the one adopted becomes exclusive." In Twohy Bros. v. Rogers, 293 F. 566, we held that the proviso referred to has relation to the remedy under existing statutes of the state, to the remedy under the Constitution, to the remedy under the common law, and, of course, to the remedy under the Compulsory Compensation Act, of which it forms a part. We therefore conclude that the option to settle is not made until necessity arises and suit has been instituted by the employee to enforce one of the remedies open to him, saved to him by the Constitution of the state.

The document here relied upon as a release, after reciting that, in consideration of $50.40 paid by Miles as part payment of a claim which Lavender has or may have against Miles by reason of an injury received April 4, 1921, continues: "I do hereby elect to seek redress for such injuries according to a chapter of the Labor Code of Arizona, known and cited as the Workmen's Compulsory Compensation Law. It is further agreed and understood that the payment of the above sum of $50.40 is to be credited to any amount or amounts due me under the Workmen's Compulsory Compensation Law, which I have hereby elected to be bound by in the adjustment of any claim which I now have or may have against said Charles Miles, growing out of the accident hereinabove described." The document was not signed until 17 days after the accident; it was not addressed to any one in particular; and no copy seems to have been forwarded to the Attorney General of the state, all as required by the statute. But we pass those points with the assumption that the instrument is a release and election within the meaning of the statutes. The question is: Was Lavender bound by it?

Lavender's evidence was that, shortly after the accident, he met Miles on the street; that Miles told him there was a check for him at the express office; that witness went and asked the express agent for the check; that the agent gave the check to him, saying, "Here is a release, a receipt for the check to be signed;" that witness then had his arm in a sling; that the agent steadied the paper, and pointed to witness where to sign, and held his hand over the paper, more than half covering it; that witness then signed, believing he was signing a receipt for the check; that nothing was said to him by Miles or the agent to the effect that he was making an election to take compensation under the Compensation Law; that he did not know that he had exercised such election until the following year, when, after some correspondence with an agent of the casualty company about the half-time matter, the agent showed witness a paper similar to the document he had signed; that witness told the agent he had no recollection of anything like that; that while witness was in the hospital Miles gave him a check, and told him that he paid insurance, and that the money was not out of his (Miles') pocket; that witness believed the payments to him were half-time pay, and that the receipts given were for the checks. On cross-examination Lavender said that he had received three checks, aggregating about $225, but that he refused the fourth check;

that he read the checks and receipts. The check of April 20, 1921, was payable to the order of Lavender, for the sum of $50.40, "in full settlement and satisfaction of claim for two weeks' compensation April 5 to 18, 1921, inclusive, account of injury April 4, 1921, while in the employ of Charles Miles." There were notations of a policy number, reference to a claim, and opposite the signature appeared the following: "The indorsement hereof by the payee shall be a full release and acquittance for the item or claim described." The check was signed by an acting manager, and was drawn upon the Maryland Trust Company. On the reverse side was an indorsement, "Indorsement hereof by the payee constitutes a receipt and release for the item mentioned in this draft," and the signature, "J. E. Lavender."

On cross-examination Lavender testified that he did not know that he was waiving any other claim for his injured arm except wages, as it was the custom for companies for which he had worked to pay injured men half time, and that he believed the custom was being followed in this instance. On redirect examination he testified that, when he was in the hospital, Davis, a representative of the casualty company, called, and upon being asked by Lavender how long he was to receive this half pay, and being told that the injury was a very serious one, replied, "If you don't receive over a 70 per cent. arm, you will get this half time for life;" that thereupon he told Davis, if he would send him an agreement to that effect, he would be glad to accept the payments; that Davis left, saying Lavender would get the checks in a few days; that a letter was later received, but that only "two little receipts" were inclosed.

[4, 5] The justice of submitting all the evidence to the jury is manifest by reference to the established rule that election of remedies is founded on the principle that it is unjust to conclude a person who is put to an election of remedies, unless he does some decisive act with full knowledge of the nature of the inconsistent rights that are his and of the necessity of choosing between them. Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52; Barton v. Oklahoma, 96 Okl. 119, 220 P. 929; O'Neil v. Lake Superior Iron Co., 63 Mich. 690, 30 N. W. 688.

[6, 7] It is argued that Lavender cannot maintain this action without having restored or offered to return the several payments which had been made to him by Miles. As a matter of course, if Lavender signed the release and agreement with full knowledge of the terms of it, and with the intention to make election, he could not avoid the effect thereof without restoring or tendering the moneys that were paid to him; but if he signed without knowledge and intention to enter into the release, and was deceived as to its contents, and signed believing it to be only a receipt for a check, his attitude became that of one not seeking to avoid a contract which he has made, but who shows that in truth and fact he never made such contract. Garcia v. California Truck Co., 183 Cal. 767, 192 P. 708. In the one instance, the instrument is voidable, and stands until annulled; in the other, there has been no contract, and the instrument signed may be disregarded in an action at law. L. R. A. 1918F, 1073, notes.

Hill v. Northern Pacific R. Co. (C. C.) 104 F. 754, pointed out the distinction above referred to. While this court affirmed the decision in that case, it held the contract merely voidable, and that a tender was necessary. In Mahr v. Union Pacific, 170 F. 699, 96 C. C. A. 19, the conclusion that tender back was necessary was founded upon the premise that the injured man understood that he was executing a release. However, if our understanding of the decisions of this court is not correct, we can safely hold that the statute of Arizona is applicable in its declaration that any contract or device, the purpose of which shall be to enable any employer to exempt himself from any liability under the Employers' Liability Act, shall to that extent be void, and that in an action against such employer under the Employers' Liability Act the employer may set off therein any sum he has paid to any insurance or indemnity company, or that he may have paid to the injured employee, on account of the injury for which such action was brought.

If, therefore, the decisions in this circuit hold generally that one who has executed a release, whether he was deceived or not, and has received money according to the terms of such instrument, cannot maintain an action without offering to restore the moneys he has received, that rule does not fully obtain in Arizona, where, under paragraph 3160, cited, the rights of the employer are guarded by authorizing a set-off in the sum that he has contributed or paid. We therefore believe that the court was justified in instructing the jury to deduct, from the amount of any verdict it might find in favor of Lavender, the amount paid by Miles to

Lavender, together with such sums as had been paid to the hospital for the benefit of Lavender.

[8, 9] Error is assigned upon the refusal of the court to give an instruction requested by defendant. The court, after stating the issue upon the question of election, submitted the question whether Lavender intended to waive his rights by signing the document, and charged that there is a presumption that, where one in possession of his senses and able to read and write signs a paper, he knows the contents thereof, but that such presumption may be repelled, either by evidence which satisfies the jury that he did not know what he was signing, or by evidence which satisfies the minds that he did not realize the purport, intent, or effect of the writing, or that he never intended to enter into an election as shown by the paper. The court added: "In other words, gentlemen, I instruct you that, in order to constitute an election under the laws of Arizona, there must be a clear intent to do so unequivocally evidenced by the plaintiff before he can be bound by it."

The requested instruction was of unusual length and included the following paragraph: "If he had an opportunity to read the paper, and failed to do so, such failure constituted a neglect of a legal duty on his part, and it thereby became as binding upon him as if he had read the same, and in that event your verdict must be for the defendant." The request, without stating qualifications already referred to, had not sufficient reference to the case, because the plaintiff's evidence was that he was deceived by the agent, who told him the document was a receipt. Furthermore, it was but a paragraph in a request, part of which, was clearly incorrect, and the court was under no duty to separate one portion from another, but was justified in refusing the whole request. Tex. & Pac. R. Co. v. Humble, 181 U. S. 57, 21 S. Ct. 526, 45 L. Ed. 747; Timell v. United States (C. C. A.) 5 F.(2d) 901.

[10] Under the authority of Twohy Bros. v. Kennedy (C. C. A.) 295 F. 462, interest is properly allowable from the date of the filing of the complaint.

The judgment is affirmed.

RUDKIN, Circuit Judge. I still adhere to the views expressed in the dissenting opinion in Twohy Bros. v. Kennedy (C. C. A.) 295 F. 462, 467; but, inasmuch as the majority ruling has become the law in this circuit, I concur in the judgment.