766 P.2d 594

**John Michael BONNER, as surviving spouse of Mary Kathryn Bonner, deceased, on his own behalf and in his representative capacity for the surviving children, Carrie Ann Bonner, and John Joseph Bonner, and the surviving parents, Charles Goldsborough and Hope Goldsborough, Plaintiff/Appellant,**

v.

**MINICO INC., an Arizona corporation; Mini Storage Security Co., an Arizona corporation; Mini Storage Service Corporation, an Arizona corporation; and Richard R. Ford, Defendants/Appellees.**

**No. 2 CA–CIV 5802.**

Court of Appeals of Arizona, Division Two, Department A.

Nov. 18, 1986.

John Philip Grace, P.C. by John Philip Grace, Phoenix, for plaintiff/appellant.

Jennings, Strouss & Salmon by Michael A. Beale and Mikel L. Moore, Phoenix, for defendants/appellees Minico, Inc., Mini Storage Sec. Co. and Mini Storage Service Corp.

Teilborg, Sanders & Parks, P.C. by John C. Gemmill, Phoenix, for defendant/appellee Ford.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the dismissal of an action for wrongful death. The trial court held that it lacked jurisdiction over the subject matter. We agree with the court's conclusion and affirm.

The facts, as shown by the depositions and affidavits of record, disclose the following. Howard (Hardy) Good and Richard Ford became business partners in 1974 when they formed Mini Storage Insurance Corporation. They also formed additional, related corporations with Good and Ford as officers and directors. These businesses

provided products and services to the self-storage industry.

Mary Bonner became an employee of the corporations in 1979 and was employed by them until her death on April 9, 1984, when she was shot to death by Richard Ford, who was then president of the parent corporation, Minico, Inc. The background to the shooting commenced in 1980 when a bad faith lawsuit was filed in California against Mini Storage Insurance Corporation. Both Good and Ford were deposed and corporate documents were produced in preparation for the trial. The litigation had a profound effect upon Mr. Ford, who was concerned that the lawsuit endangered the corporations. As the litigation progressed, Ford felt that he had done badly as president of the corporation. He became anxious, developed insomnia and saw a doctor who prescribed tranquilizers. After he read his deposition he became depressed, anxious and suspicious that his files were not "right." He then began to compulsively study his files in detail and claimed that files were misplaced or inappropriately filed and that the files contained papers which should not have been there.

By the third week in March 1984, Ford told his wife that things were going badly and that somebody was "putting stuff" in his files. He told her that he thought it might be Good and he became further disturbed when he found that Good was to go to Los Angeles to testify rather than he, as president of the company. After going through about 1,300 pieces of paper, he became suspicious that many of the documents were different, substituted or altered and that Good and Mary Bonner, manager of the customer storage insurance division, were in "cahoots," meeting together and trying to load his files with incorrect information in order to discredit and dishonor him.

On April 7, 1984, he went to his parents' home and told them what was going on. He also purchased a tape recorder and confronted Good, who denied any collusion. Good invited him to play racquetball and he declined. The next day, Ford concluded that he ought to retain counsel and called his father and older brother for their recommendation of an attorney. Ford called one attorney suggested by his wife, but he declined to take the case. Ford then became exceedingly agitated, and telephoned the attorney who was in California with Good. Ford was either seeking information or attempting to alert this attorney that something strange was going on. Ford got no reassurance from the attorney, and he went to the office that night to again peruse the files. Ford's mother-in-law called him at the office and urged him to come home. He did so, and later that evening admitted to his mother-in-law that he had been thinking of suicide.

By the next day, April 9, Ford believed that all the employees of the corporations were involved in a conspiracy against him. When he got in his car to go to work, he took his loaded revolver and pointed it at himself with the idea of committing suicide but changed his mind and went to the office. He arrived there around 10:00 a.m. and talked on the telephone to Good, who was in California for the trial. Good told him what was going on at the trial and that things did not look good. After this telephone conversation, according to Ford, as he sat at his desk his anxiety became greater and greater and things became very confused. His mind was spinning at a very rapid rate, until it seemed to just stall, and not move anymore. He then went out to the car to get his revolver and went into Bonner's office. He asked her why she had done all this to him and there was no response. He remembered aiming the gun at Bonner but did not remember pulling the trigger. The police reports indicate that he emptied the five-shot revolver into Bonner, killing her. He then walked out of Bonner's office, told someone that Bonner was hurt and to get an ambulance, and then he left. He got in his car intending to go home and get some more cartridges so that he could shoot himself, but he changed his mind because he did not want to kill himself in front of his wife and children. He then attempted to kill himself by driving his car at a high rate of speed into a utility pole.

John Michael Bonner, the surviving husband of Mary Bonner, elected to make no claim for workmen's compensation, and brought this wrongful death action on behalf of himself, the two minor children of the decedent and her parents. The first amended complaint alleged that the death of Mary Bonner was caused by Ford's act of wilful misconduct within the course and scope of his employment. Appellees moved for summary judgment. The trial court questioned whether it first had to make a determination of jurisdiction and requested the parties to file supplemental memoranda. After the memoranda were filed the trial court dismissed the action, ruling that:

"The determination of jurisdiction is a matter for the court to determine before the matter proceeds to trial. *Morgan v. Hays*, 102 Ariz. 150, 426 P.2d 647 (1967). The doctors who have examined Defendant Richard Ford agree that Defendant Ford was insane, acting without normal judgment and controlled by a delusion at the time that he shot Mary Bonner. Plaintiff has filed an affidavit of a board certified psychiatrist who also concludes that Defendant Ford was suffering from a psychosis with a major delusional component. Therefore, there does not appear to be any dispute that Defendant Ford was insane and did not know right from wrong at the time he shot Mrs. Bonner.

Plaintiff nevertheless argues that Mary Bonner's death was caused by Defendant Ford's wilful misconduct as that term is defined in A.R.S. § 23–1022 because he performed the act in a knowing, conscious and directed manner with an awareness that the result would be to injure or kill Mary Bonner. Citing the tort liability rule that insanity is not a defense to an intentional tort, Plaintiff requests the Court to find that a co-employee can be responsible for wilful misconduct even if he is insane and lacks normal judgment at the time of his acts.

The Court concludes that because of Mr. Ford's psychotic delusion which deprived him of his normal judgment, his acts are not 'wilful misconduct' within the meaning of A.R.S. § 23–1022. Al-

though there is no case directly on point in Arizona, the Court believes the cases interpreting the phrase 'purposely' in A.R.S. § 23–1021 dealing with self-inflicted injuries are persuasive. The Arizona Supreme Court has held that if an employee is deprived of his normal judgment by job related constant and severe pain or by stress his suicide will not be purposeful. *Graver Tank & Mfg. Co. v. Industrial Commission*, 97 Ariz. 256, 399 P.2d 664 (1965). *Wood v. Industrial Commission*, 108 Ariz. 50, 492 P.2d 1157 (1972); *Findley v. Industrial Commission*, 135 Ariz. 273, 660 P.2d 874 (Ct.App. 1983)."

Appellant contends that the issue of whether Ford's conduct was wilful or not was a question of fact to be decided by the jury and that, in any event, the testimony of the psychiatrist showed that Ford's act was wilful within the meaning of A.R.S. § 23–1022(A). We do not agree.

A.R.S. § 23–1022(A) and (B) provide as follows:

"A. The right to recover compensation pursuant to this chapter for injuries sustained by an employee or for the death of an employee is the exclusive remedy against the employer or any co-employee acting in the scope of his employment, and against the employer's workmen's compensation insurance carrier or administrative service representative, except as provided by § 23–906, and except that if the injury is caused by the *employer's wilful misconduct, or in the case of a co-employee by the co-employee's wilful misconduct, and the act causing the injury is the personal act of the employer, or in the case of a co-employee the personal act of the co-employee,* or if the employer is a partnership, on the part of a partner, or if a corporation, on the part of an elective officer of the corporation, and the act indicates a wilful disregard of the life, limb or bodily safety of employees, the *injured employee may either claim compensation or maintain an action at law for damages against the person*

*or entity alleged to have engaged in the wilful misconduct.*

B. 'Wilful misconduct' as used in this section means an act done *knowingly and purposely* with the direct object of injuring another." (Emphasis added.) [1] Whether or not the claim of an injured workman is within the jurisdiction of the Industrial Commission is a matter of law for decision by the court. *Morgan v. Hays*, 102 Ariz. 150, 426 P.2d 647 (1967), cert. denied, 389 U.S. 859, 88 S.Ct. 105, 19 L.Ed. 2d 125. *Ringling Bros. v. Superior Court of Pima County*, 140 Ariz. 38, 680 P.2d 174 (App.1983). This is true even when there is a dispute in the facts underlying jurisdiction. Thus, in *Circle K Corporation v. Rosenthal*, 118 Ariz. 63, 574 P.2d 856 (App. 1977), the court held a trial on the jurisdictional issue to determine from conflicting facts, whether or not the employer had complied with the notice posting requirements of A.R.S. § 23–906. The trial court was thus correct in determining the jurisdictional issue prior to any other.

The next question is whether Ford's act of killing Mary Bonner was done knowingly and purposely.[2] Appellant contends that because under the common law an insane person is responsible for his torts, see Restatement (Second) of Torts § 283B (1965), and because the issue here is whether appellants can sue the employer under common law, we should follow the common law on this issue. We do not agree. We are guided by A.R.S. § 23–1022(B) and not by the common law. We do not believe that an act of an insane person, a person acting under a delusion, is an act done knowingly and purposely within the meaning of the statute. There was psychiatric evidence that Ford intended to shoot Mary Bonner. However, it is clear

that this intention was a product of his insane delusion. When one's act is a product of an insane delusion, it is not knowingly and purposely done.

Affirmed.

HATHAWAY, C.J., and FERNANDEZ, J., concur.

---

1. A.R.S. § 23–906 allows a common law action for damages against the employer when the employee has filed, prior to his injuries, a notice of election to reject workmen's compensation, or, when the employer has failed to post and keep posted a notice of the employee's right to reject workmen's compensation and make available blank forms of the notice of rejection.

2. In order for appellants to have a remedy in superior court they must prove not only "wilful misconduct," but also that the act causing the

injury was the *personal* act of the co-employee. The word "personal" used in this context means non-business related. Cf. *Perez v. Fred Harvey*, 54 N.M. 339, 224 P.2d 524 (1950) (distinguishing between purely "personal" motives and business-related motives); and *Howard v. Harwood's Restaurant Co.*, 25 N.J. 72, 135 A.2d 161 (1957) (distinguishing between an assault motivated by purely personal, non-business reasons versus an assault by an insane person).