766 P.2d 598

John Michael BONNER, as surviving spouse of Mary Kathryn Bonner, deceased, on his own behalf and in his representative capacity for the surviving children, Carrie Ann Bonner, and John Joseph Bonner, and the surviving parents, Charles Goldsborough and Hope Goldsborough, Plaintiffs/Appellants,

v.

MINICO, INC., an Arizona corporation; Mini Storage Security Co., an Arizona corporation; Mini Storage Service Corporation, an Arizona corporation; and Richard R. Ford, Defendants/Appellees.

No. CV–87–0016–PR.

Supreme Court of Arizona, En Banc.

Nov. 22, 1988.

Reconsideration Denied Jan. 24, 1989.

---

John Philip Grace, Phoenix, for plaintiffs/appellants.

Jennings, Strouss & Salmon by Michael A. Beale and Mikel L. Moore, Phoenix, for defendant/appellee Minico, Inc.

Teilborg, Sanders & Parks, P.C. by John C. Gemmill, Phoenix, for defendant/appellee Ford.

MOELLER, Justice.

## JURISDICTION

Mary Bonner was employed for several years by Minico, Inc. On April 9, 1984, while at work in her office, she was shot to death by Richard Ford, president of Minico. Her surviving husband, John Bonner, brought this wrongful death action against Ford and Minico in superior court. The amended complaint sought damages for John Bonner as surviving husband, for two surviving Bonner children, and for Mary Bonner's surviving parents. The trial court dismissed the amended complaint, finding that the court had no subject matter jurisdiction because the shooting did not fall within the "wilful misconduct" exception of A.R.S. § 23–1022 and Ariz. Const. art. XVIII, § 8. The court of appeals affirmed the dismissal and we granted review. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3) and Rule 23, Ariz.R.Civ.App.P., 17B A.R.S.

## FACTS AND CASE HISTORY

Richard Ford, president of Minico, falsely believed that Mary Bonner and Howard Gooding, Ford's business partner, were conspiring against him. Acting under this false belief, Ford went to Mary's office and shot her several times, fatally injuring her. He then walked to his car, got in it and drove into a pole, hoping to kill himself. He survived.[1]

John Bonner's amended complaint in superior court alleged that Mary's death, while in the course of her employment, was the result of Ford's "wilful misconduct." Thus, plaintiff contended that A.R.S. § 23–1022 permitted him to make a post-injury election to reject worker's compensa-

tion benefits and to sue the employer and co-employee for wrongful death in superior court.

Minico first filed a motion for summary judgment in the trial court, contending that Ford was not acting within the scope of his employment and, thus, Minico was not liable for Ford's actions. Both plaintiff and Ford opposed the motion. In opposition, Ford suggested that plaintiff's exclusive remedy was under worker's compensation and, therefore, the superior court lacked jurisdiction. At the hearing on the "scope of employment" motion, the court questioned whether it had subject matter jurisdiction over the matter. To resolve this question, the court allowed the parties to conduct additional discovery, file supplemental memoranda, and orally argue whether Ford's actions constituted "wilful misconduct."

Relying on *Morgan v. Hays*, 102 Ariz. 150, 426 P.2d 647, *cert. denied*, 389 U.S. 859, 88 S.Ct. 105, 19 L.Ed.2d 125 (1967), the trial court first determined that it was the appropriate entity to determine whether it had subject matter jurisdiction. The trial court then determined that the killing was not "wilful misconduct" within A.R.S. § 23–1022. In accordance with this finding, the trial court dismissed the case for lack of jurisdiction over plaintiff's objection that he was entitled to a jury trial on the disputed jurisdictional issue. The court of appeals agreed with the trial court's analysis and affirmed the dismissal.

## ISSUES PRESENTED

We granted review to resolve the following issues:

1. In a civil case, what is the proper method to resolve disputed jurisdictional facts when those disputed jurisdictional facts are intertwined with the merits of the case?

2. Was the proper method to resolve disputed jurisdictional facts used in this case?

---

1. Additional background facts are set forth in the court of appeals' opinion. *Bonner v. Minico,*

159 Ariz. 242, 766 P.2d 594 (App.1986).

We recognize that often jurisdictional questions arise in the context of determining which of two or more alternative fora is the appropriate one to resolve a dispute. That is not the case here. Here, the superior court is clearly the proper forum to resolve the "jurisdictional" issue. No party to this suit and neither of the lower courts have suggested otherwise. The dispute here is over the *method* that the superior court should use to resolve the dispute.

## DISCUSSION

### 1. The Problem

█ In most cases, absent a pre-accident election by the employee, workers' compensation is the employee's exclusive remedy against the employer for work-related injuries. Arizona cases have long stated that the superior court lacks "jurisdiction" over work-related injury cases if the employee's exclusive remedy is workers' compensation. Article XVIII, § 8 of the Arizona Constitution, however, creates an exception to the exclusive remedy rule for injuries or deaths which are the result of acts of the employer (or co-employee) done "knowingly and purposely with the direct object of injuring another and the act indicates a wilful disregard of the life, limb or bodily safety of employees." A.R.S. § 23–1022 implements this constitutional exception.

Although these constitutional and statutory provisions set forth a limited exception that permits an employee to reject workers' compensation and sue the employer, they do not address the question of who determines, as between court or jury, whether the exception applies. The plaintiff here claims he is entitled to a jury resolution under article II, § 23 of the Arizona Constitution, which provides: "The right to trial by jury shall remain inviolate...." The defendants contend, and the lower courts held, that the trial judge is required or, at least, permitted to make the decision. They rely primarily upon our decision in *Morgan v. Hays* for this proposition.

### 2. *Morgan v. Hays* and Other Arizona Authorities

The court of appeals, relying on *Morgan v. Hays*, 102 Ariz. 150, 426 P.2d 647, *cert.* *denied*, 389 U.S. 859, 88 S.Ct. 105, 19 L.Ed. 2d 125 (1967), held that the question of whether plaintiff's claim fell within the constitutional and statutory exception was a question of law for the court. Under the court of appeals' view, the issue remained one for the court alone to resolve even though the underlying facts were disputed.

In *Morgan*, the defendant employer moved to dismiss the employee's complaint, contending that the suit was barred because the employee had earlier applied for and received workers' compensation benefits. *Id.* at 151, 426 P.2d at 648. The employee contended that he was entitled by article XXIII, § 2 of the Arizona Constitution to have a jury decide whether he had accepted compensation and had, therefore, waived his right to sue. *Id.* at 151–52, 426 P.2d at 648–49.

After a four-day hearing, the trial judge advised counsel that he was declining to rule on the jurisdictional issue before trial. The employer then filed a writ with this court; we directed the trial court to rule on the matter of subject matter jurisdiction. The trial court then ruled that it did not have jurisdiction and dismissed the action.

A three-member majority of this court affirmed the dismissal and held that the trial court, not the jury, determines whether it has jurisdiction. The majority stated:

> [we find no reason] to permit the question of jurisdiction to be submitted to a jury in the trial of a case on the merits which might well result in a two or three week trial in a case where the court would have to direct a verdict in favor of a defendant under the evidence. We do not feel that the rule (Rule 42(b) Arizona Rules of Civil Procedure 16 A.R.S., as amended, 1966) permitting the court to order a separate trial on the question of jurisdiction would be sufficient to overcome this objection, in that it would require delay and determination by the court as to whether the facts in each case would justify such a separate trial.

Id. at 155, 426 P.2d at 652.

We make two observations concerning the majority holding in *Morgan*. First, from the language quoted, the court apparently felt that there was no factual dispute to submit to a jury for resolution even if the issue were properly a jury issue. Second, *Morgan* was not a "wilful misconduct exception" case and the jurisdictional issue presented was wholly unrelated to the merits of the case. Two members of the court dissented vigorously, contending that the majority opinion violated the employee's right to a jury trial as guaranteed by the Arizona Constitution.

In reaching its decision, the *Morgan* court relied heavily on two of its earlier cases, *State ex rel. Industrial Comm'n v. Pressley*, 74 Ariz. 412, 250 P.2d 992 (1952), and *S.H. Kress & Co. v. Superior Court*, 66 Ariz. 67, 182 P.2d 931 (1947).

In *Kress*, the employee was an illegally employed thirteen-year-old boy. His guardian sought and received workers' compensation benefits in the form of payments for medical bills and a lump sum award. The guardian then filed a common-law negligence action in court, arguing that, because of his age, the employee was legally incapable of electing a remedy. This court held that the employee's age did not bar a valid waiver. Because it was uncontroverted that benefits had been accepted, the superior court lacked jurisdiction, and, therefore, was precluded from proceeding. *Id.* at 75, 182 P.2d at 939. We note that *Kress*, like *Morgan*, involved a jurisdictional issue unrelated to the merits of the case. *Kress* also involved solely an issue of law, there being no disputed facts.

The Ninth Circuit cited *Kress* a few years later in a case involving Arizona law. *See Taylor v. Hubbell*, 188 F.2d 106 (9th Cir.), *cert. denied*, 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618 (1951). In that case, Hubbell, an employee of Tucson Gas, was injured on the job, accepted workers' compensation benefits, and then sued Sanderson and Porter, a partnership which was constructing generating facilities for Tucson Gas.

The partnership and others claimed to be co-employees of the plaintiff. They claimed immunity from suit because of their status as co-employees and because plaintiff had accepted benefits. The trial court refused to submit these defensive issues to the jury.

The Ninth Circuit, citing *Kress* and other cases, held that the issues raised in defense were jurisdictional and as such were properly determined by the court, not the jury. 188 F.2d at 109. In *Taylor*, however, the Ninth Circuit failed to mention, let alone discuss, *Miles v. Lavender*, 10 F.2d 450 (9th Cir.1926), an earlier federal case under Arizona's Employers' Liability Act, which had held that the question of whether the employee had made an election of remedies was for the jury.[2]

This court cited *Taylor* to support the proposition that questions of election were questions of law for the court. *State ex rel. Industrial Comm'n v. Pressley*, 74 Ariz. 412, 250 P.2d 992 (1952). In an earlier *Pressley* case involving the same parties and the same accident, this court held that the superior court, not the Industrial Commission, was the proper forum to decide whether an injured employee had the right to maintain an action against a third party. *Pressley v. Industrial Comm'n*, 73 Ariz. 22, 236 P.2d 1011 (1951). The employee then brought a third-party action in superior court. The commission sought to intervene and contended that the employee had no right to sue the third party because he had elected to take compensation.

We held that the trial court was the proper tribunal to determine whether the employee had made an election. More importantly for purposes of the instant case, we specifically relied on *Taylor v. Hubbell* to support our holding that the question of whether the employee had made a valid election was one of law for the judge and not for the jury. *Pressley* and its reliance on *Taylor v. Hubbell* has been severely criticized by a distinguished observer of Arizona law:

---

**2.** The Employers' Liability Act, A.R.S. §§ 23–801 to –808, is separate from, but akin to, the Workers' Compensation Act.

Until modified, this holding [*Pressley*] will doubtless be followed in the trial courts. It is submitted, nonetheless that the holding is wrong. In *Hubbell*, tried in the US District Court, both parties were agreed that the election question was one for the jury. However, the trial court determined the issue as a matter of law and refused to submit it to the jury. The [c]ourt of [a]ppeals affirmed plaintiff's judgment on the ground that whether there had been an election went to the jurisdiction of the court, and that such questions could be decided without aid of jury. In effect the holding, turning on a [f]ederal jurisdictional point, was that there was no reversible error in the trial court's action. However, the procedure followed was not recommended as proper and desirable in every instance. In *State v. Pressley* the Arizona [c]ourt seized upon this holding and expanded it into a doctrine that questions of election MUST in every situation be determined by the court. It is submitted that the holding is squarely against [a]rticle 2, [s]ection 23, of the Constitution preserving trial by jury as an absolute right in all situations and as to all issues. [footnote omitted] Other decisions indicate that the [s]upreme [c]ourt is without power to adopt any rule abridging or modifying a party's universal right to jury trial. [footnote omitted] It is suggested that the criticized portion of the *Pressley* decision was made in unjustified reliance on the *Hubbell* case, without a proper understanding of the peculiar basis of the *Hubbell* holding, and without consideration of the constitutional point just discussed.

*See* M. Udall, Alternate Remedies for Industrial Injuries § 16.

It was against this background of case law that we restated in *Morgan v. Hays* the rule that issues of waiver are triable to the court as jurisdictional questions. Inter-estingly, *Morgan* did not distinguish or even refer to *Jeune v. Del Webb Constr. Co.*, 76 Ariz. 418, 265 P.2d 1076 (1954), a case decided less than two years after *Pressley*.

In *Jeune*, the injured employee filed a negligence action in superior court against his employer. The employee argued that he was not limited to workers' compensation because the employer had failed to post the premises in the manner required by law. The superior court directed a verdict against the employee, finding that plaintiff had produced no evidence from which a reasonable person could conclude that the posting was insufficient. Contrary to the approach in *Pressley*, this court framed the issue as "whether appellant [employee] submitted any competent evidence that entitled him to go to the jury upon the ground that defendant-appellee failed to post a notice as required by the statute." *Id.* at 421, 265 P.2d at 1079. This court affirmed the directed verdict without referring to *Kress*, *Taylor*, or *Pressley*. Clearly, the *Jeune* court assumed that the question of whether an employer had properly posted was for the jury.

Although the dissenters in *Morgan v. Hays* did not cite *Jeune*, they strenuously asserted that issues of elections of remedies or of waiver were for the jury.[3] The dissenters noted that the Arizona Constitution preserved the right of jury trial in a common-law action for negligence. Thus, argued the dissenters, the plaintiff was entitled to a jury trial on what they labelled "affirmative defenses." *Morgan v. Hays*, 102 Ariz. at 159–60, 426 P.2d at 656–57 (Struckmeyer, J., dissenting).

Despite the unequivocal language of the majority opinion in *Morgan*, Arizona courts have demonstrated considerable confusion over the proper interplay between a right to a jury trial and the trial court's duty to ascertain subject matter jurisdiction. In

---

**3.** *Accord Haynes Drilling Corp. v. Smith*, 200 Ark. 1098, 143 S.W.2d 27 (1940); *Talge Mahogany Co. v. Burrows*, 191 Ind. 167, 130 N.E. 865 (1921); *Addison v. Tessier*, 62 N.M. 120, 305 P.2d 1067 (1957); *Lassell v. Mellon*, 219 A.D. 589, 220 N.Y.S. 235 (1927); and *Leonard v.* *Hare*, 161 Tex. 28, 336 S.W.2d 619 (1960). *Contra Freire v. Matson Navigation Co.*, 19 Cal.2d 8, 118 P.2d 809 (1941); *Burgess v. Gibbs*, 262 N.C. 462, 137 S.E.2d 806 (1964); *Adams v. Davison-Paxon Co.*, 230 S.C. 532, 96 S.E.2d 566 (1957).

*Serna v. Statewide Contractors, Inc.,* 6 Ariz.App. 12, 429 P.2d 504 (1967), decided a few weeks after *Morgan,* the question, as here, was whether the injury fell within the "wilful misconduct" exception of A.R.S. § 23–1022. The trial court granted the employer's motion for summary judgment on that issue.

The court of appeals affirmed, and held "that the facts presented on review, viewed in the light most favorable to the plaintiff-employees, clearly establish the negligence of the defendant-employer but failed to establish that the employer, through its elected officer, acted with the intent required by our statute." *Serna,* 6 Ariz.App. at 16; 429 P.2d at 508. The court never suggested that the question was a jurisdictional one that could or should have been decided solely by the court even on disputed facts.

In *Howard P. Foley Co. v. Harris,* 10 Ariz.App. 78, 456 P.2d 398 (1969), decided two years after *Serna,* the court distinguished the then-recent *Morgan v. Hays* case. The issue in *Foley* was whether the employer had properly posted the premises and whether the plaintiff had made a binding election. The trial court submitted the evidence on posting to an advisory jury which found that the employers had failed to comply with statutory posting requirements. The trial court then adopted the jury's findings in addition to some of its own. The election issue was tried to the court, which found that the plaintiff had not made a binding election to accept compensation.

On appeal, the defendants argued that the trial court erred, under *Morgan,* by submitting the posting questions to the advisory jury. The appellate court disagreed, distinguishing *Morgan* on three grounds: first, *Morgan* dealt only with election and not with posting; second, *Morgan* involved only the *right* to a jury determination and did not address the question of whether it would be error to use a jury in an advisory capacity; third, the court discussed *Jeune* as follows:

Another reason compels a conclusion that it was not error to submit the questions to the jury. In *Jeune v. Del E.*

*Webb Construction Co.,* (citation omitted) the Arizona Supreme Court upheld a directed verdict for the employer where the only evidence available to show that notices were not posted was negative testimony by the employee's witnesses that they had not seen any notices posted. The court indicated that had there been sufficient evidence it would have been proper to submit the issue to the jury. Thus, we find no error in the procedure followed by the trial court in the instant case.

*Foley,* 10 Ariz.App. at 81, 456 P.2d at 401.

We denied review of the court of appeals' opinion in *Foley.* Since *Foley,* Arizona trial courts have used a variety of procedures to decide election and posting issues. For example, in *Circle K Corp. v. Rosenthal,* 118 Ariz. 63, 574 P.2d 856 (App.1977), the trial court severed the election issue from the merits of the case. In *Ringling Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Court In and For Pima County,* 140 Ariz. 38, 680 P.2d 174 (App. 1983), where the issue was whether an employer-employee relationship existed, Division Two of the court of appeals relied on *Morgan* for the proposition that such an issue must be decided by the court and that plaintiffs had no right even to an advisory jury. It distinguished *Foley* by noting that in *Foley* the issue was whether the trial judge erred by using an advisory jury, not whether a plaintiff had a right to trial by an advisory jury on a jurisdictional question.

In *Young v. Environmental Air Products,* 136 Ariz. 206, 665 P.2d 88 (App.1982), *aff'd as modified,* 136 Ariz. 158, 665 P.2d 40 (1983), one of the issues was whether Foster was an employee of the defendant Environmental Air Products. The trial court submitted that issue to the jury. On appeal, the court of appeals affirmed the jury's finding, without faulting the procedure used. On further appeal, this court affirmed with some modification, again without discussion or disapproval of the trial court's decision to send the issue to the jury.

This review of pre- and post-*Morgan* cases in Arizona workers' compensation cases leads to the following inconclusive and somewhat anomalous observations relative to the "proper" method by which "jurisdictional" issues should be resolved:

1. The *Morgan* rule that jurisdictional issues are questions of law for the court has never been applied in an Arizona case in which the resolution of the jurisdictional issue was intertwined with a resolution of the merits of the claim.

2. At least one federal case under Arizona's Employer's Liability Act, *Miles v. Lavender*, has held that the question of whether an employee has made an election of remedies was a jury question.

3. Some cases did not involve disputed factual issues in the first instance. The legal issues in those cases could appropriately be resolved by the court alone regardless of whether they were designated "jurisdictional."

4. In *Serna v. Statewide Contractors, Inc.*, the one Arizona case involving the precise question involved in this case, i.e., the applicability of the "wilful misconduct" exception, the court assumed without discussion that the issue was appropriately handled like any other factual issue.

5. In at least one case, *Jeune v. Del Webb Constr. Co.*, it was assumed, again without discussion, that an issue of adequacy of posting was a jury issue.

6. In at least one case, *Young v. Environmental Air Products*, the court assumed that the question of "employment" was a jury question.

7. No Arizona case discusses the United States Supreme Court case of *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), or related federal authorities.

### 3. Adoption of a Rule for Arizona

■ As noted in the previous section, no Arizona case has considered how jurisdictional issues should be resolved when those issues are intertwined with the merits; federal cases have.

Although a few early federal cases held that a party had a right to a jury trial on contested facts relating to jurisdiction, *see, e.g., Fischer v. Munsey Trust Co.*, 44 App. D.C. 212 (1915) (defendant lured to jurisdiction so that process could be served); *O'Donnell v. Beechnut Packing Co.*, 45 App.D.C. 425 (1916) (subject to service of process), the vast majority of courts held that there was no right to a jury trial on contested jurisdictional issues. 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 38.36[1] n. 4 (2d ed. 1987).

It was generally recognized that a court had discretion to submit contested jurisdictional fact issues to an advisory jury, but the judge could decide them without the aid of the advisory jury. *See, e.g., Wetmore v. Rymer*, 169 U.S. 115, 121, 18 S.Ct. 293, 295, 42 L.Ed. 682 (1898). Some argued that submitting jurisdictional questions to the jury would result in delay and would thereby impair the litigant's rights to jury trial on the merits. 5 J. Moore, *supra*, ¶ 38.36[1]. Some also felt that courts would rule more consistently on jurisdiction issues than would juries. *Id.*

However, the United States Supreme Court held in *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), that jurisdictional questions must be left for trial rather than be determined on a Rule 12 motion to dismiss where the determination of the jurisdictional question would also necessarily determine the merits of the case. 330 U.S. at 739, 67 S.Ct. at 1013, 91 L.Ed. at 1216.

*Land v. Dollar* has been consistently followed by the lower federal courts since it was handed down in 1947. *See, e.g., Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113 (9th Cir.1983); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730 (9th Cir.1979). However, courts have struggled in deciding which facts are "jurisdictional" and which are "substantive," so as to give right to a jury trial. *E.g., McBeath v. Inter-American Citizens for Decency Committee*, 374 F.2d 359 (5th Cir.), *cert. denied*, 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967). In fact, the Supreme Court has questioned whether facts that must be shown to entitle a plaintiff to relief are "jurisdictional"

at all. *See, e.g., Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *see also Marks Food Corp. v. Barbara Ann Baking Co.,* 274 F.2d 934 (9th Cir. 1959).

The intermingling of substantive and jurisdictional facts is sometimes found in cases involving a question of personal jurisdiction. For example, a court's personal jurisdiction over a defendant may depend on a finding that the defendant committed a tortious act which caused an event to occur within the jurisdiction. *See, e.g.,* Ariz.R.Civ.P.Rule 4(e)(2) 16 A.R.S. In such a case, *Land v. Dollar* instructs that the court should not itself resolve the case while resolving jurisdiction. *Accord Andreas v. Imperial Airlines, Inc.,* 211 F.Supp. 311 (E.D.Pa.1962); 5 J. Moore, *supra* ¶ 38.36[1]. However, these jurisdictional factual issues, like other factual issues, remain subject to the usual rules of summary judgment. If the record does not demonstrate a material issue of disputed fact, summary judgment remains appropriate. *See, e.g., Page v. Work,* 290 F.2d 323 (9th Cir.), *cert. denied,* 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961); *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 733–737 (9th Cir.1979); *McBeath v. Inter–American Citizens for Decency Committee,* 374 F.2d 359 (5th Cir.), *cert. denied,* 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967); *see also Gulf Oil Corp. v. Copp Paving Co., Inc.,* 419 U.S. 186, 212–14 n. 9, 95 S.Ct. 392, 406–08 n. 9, 42 L.Ed.2d 378, 386–88 n. 9 (1974) (Douglas, J., dissenting); 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1350 (1987).

We conclude that *Land v. Dollar* represents a sound approach. It preserves to the trial court the ability to resolve traditional jurisdictional issues, including those which involve disputed issues of fact. It preserves to the parties their right to a trial by jury on the merits of their case, even when the merits are intertwined with jurisdictional issues. Because we believe the *Land v. Dollar* analysis strikes a proper and appropriate balance, we adopt it for Arizona.

## APPLICATION OF THE RULE TO THIS CASE

█ It is unclear to us exactly what conclusion the trial judge reached in this case. She may have concluded that the evidence showed, as a matter of law, that Ford's acts did not fall within the statutory exception and, therefore, the plaintiffs could not proceed directly against the employer and the co-employee. However, she may have concluded that, although the facts were conflicting, it was her duty to resolve them under the *Morgan* case. Because jurisdictional fact issues are subject to summary judgment just as any other fact issues, we will affirm if summary judgment was appropriate for the defendant in this case. We turn, therefore, to an examination of the record and the applicable law concerning the "wilful misconduct" exception.

The trial court had before it the deposition testimony of certain lay witnesses concerning the facts of the shooting and the events leading up to it. It also had the deposition testimony of a psychiatrist and of a psychologist who had examined Ford, and the affidavit testimony of a board-certified psychiatrist.

█ Before analyzing the evidence before the trial court, we observe that the question of whether Mrs. Bonner's death was compensable under workers' compensation statutes is wholly independent of the question of whether her survivors may maintain this wrongful death action. In some of defendants' briefs and arguments, it is suggested that, somehow, the questions are interrelated and that, if the death is covered by workers' compensation, plaintiffs may not maintain this action. Such is not the case. The statute under consideration, A.R.S. § 23–1022, assumes that the work-related injury or death is covered by workers' compensation and then defines the limited circumstances in which such benefits may be rejected and a direct action maintained.

█ The trial court stated:

The court concludes that because of Mr. Ford's psychotic delusion which deprived him of his normal judgment, his acts were not "wilful misconduct" within the meaning of A.R.S. § 23–1022. In the absence of "wilful misconduct" on the part of Mr. Ford, plaintiff's exclusive remedy is workers' compensation.

We do not read into the statute a requirement that the offending employer or co-employee act with "normal judgment." Indeed, because the statute requires "wilful misconduct" and defines it as an act which "indicates a wilful disregard of the life, limb or bodily safety of employees," a requirement of "normal judgment" would eviscerate, if not eliminate, the statutory exception.

Ford's doctors, who were working with Ford in connection with the criminal case arising out of the shooting, believed that Ford was psychotic, that the shooting was the result of a psychotic delusion, that Ford was acting without normal judgment and had lost contact with reality, that he did not know right from wrong, that he suffered from a thought disorder, that he was "on automatic," and that he was legally insane under the *M'Naghten* test. Of course, tort liability is not determined by rules of criminal liability. In this case, not even the general rules of tort liability govern—the question is whether the narrow statutory exception of A.R.S. § 23–1022 applies. Relative to this question, Ford's doctors did opine that Ford did not act with "wilful misconduct." However, one of the doctors also acknowledged that: "I think he wanted to eliminate her [Bonner] and get rid of her because she was causing problems." The other doctor acknowledged that Ford knew that the gun might kill Mary Bonner and that Ford wanted to injure her. He also acknowledged that Ford's statements made to the police immediately after the incident showed a motivation to harm Mrs. Bonner.

One board-certified psychiatrist concluded that, although Ford was suffering from a psychosis of brief duration with a major delusional component, he nevertheless was acting in a knowing, conscious, and directed manner with an awareness that the end result would be to injure or kill Mary Bonner.

In addition to medical opinion evidence, there was evidence that before Ford went to the office on the morning of the killing, he took out his loaded gun, contemplated suicide, and then decided not to shoot himself. He was familiar with firearms and had owned this revolver for fifteen years. He contemplated killing himself with the gun and knew that it could kill others. Ford himself recalled going to his car, getting the revolver, going into Mary's office, closing the door, asking her a question, hearing her response, and then taking out the gun. He remembers Mary screaming and he remembers telling an employee that Mary was hurt. He knew that he had fired all of the shells in the gun because he considered going home to reload it so that he could commit suicide.

Arizona courts have consistently held that to fit within the statutory exception, a plaintiff must show something more than ordinary negligence or even gross negligence. *Allen v. Southwest Salt Co.*, 149 Ariz. 368, 372, 718 P.2d 1021, 1025 (App. 1986); *Serna v. Statewide Contractors, Inc.*, 6 Ariz.App. 12, 429 P.2d 504 (1967). Defendants argue that Ford was incapable of acting "purposely" and rely principally upon the following cases: *Findley v. Industrial Comm'n*, 135 Ariz. 273, 660 P.2d 874 (App.1983); *Wood v. Industrial Comm'n*, 108 Ariz. 50, 492 P.2d 1157 (1972); *Graver Tank & Mfg. Co. v. Industrial Comm'n*, 97 Ariz. 256, 399 P.2d 664 (1965). In each of those cases, an employee suffered an industrial injury with resulting extreme pain which, in turn, led to an attempted suicide. In each case, the employee was held not to be barred from receiving compensation under the provisions of A.R.S. § 23–1021 which excludes compensation for injuries "purposely self-inflicted." Arizona courts have long recognized that the legislative objectives of the workers' compensation statute are furthered if it is liberally interpreted when imposing liability for payment of compensation benefits. That principle was recog-

nized in each of the cited cases. Thus, it is not surprising that coverage was provided to employees who attempted suicide as a result of covered injuries. We have also recognized, however, that when the question is whether a worker's common-law rights should be denied him, it is equally appropriate to interpret strictly the workers' compensation statutes. *Young v. Environmental Air Products*, 136 Ariz. 158, 655 P.2d 40 (App.1983).

Our review of the record leads us to conclude that there are disputed material issues of fact on the issue of whether Ford's actions fall within the exception contained in A.R.S. § 23–1022 and in Ariz. Const. art. XVIII, § 8.

### CONCLUSION AND DISPOSITION

■ We adopt the following rule in civil cases: where the determination of a trial court's jurisdiction necessarily involves the determination of disputed facts, which facts are intertwined with the merits of the case, the resolution of the disputed fact issues is for the fact-finder. Principles of summary judgment apply to jurisdictional factual issues the same as they apply to other factual issues. However, if summary judgment is inappropriate, the disputed fact issues must be submitted to the ultimate fact-finder. If the parties waive their right to trial by jury or are not entitled to a jury because of the nature of the issues, the trial court will hear and determine the issues as it would any other contested factual issues. If the parties are entitled to a jury, the jury shall resolve the issues. Whether trial is to the court or to a jury, the trial court is permitted to exercise its discretion under the rules of civil procedure to resolve the issues in the most orderly and expeditious manner. Bifurcated trials, advisory juries, and special interrogatories are as available for the resolution of jurisdictional issues as they are to any other factual issues.

Because summary judgment was not appropriate here, plaintiff was entitled to a jury resolution of the disputed jurisdictional facts. Therefore, the court of appeals' opinion is vacated. The judgment of the trial court is reversed, the complaint is reinstated, and this case is remanded to the trial court for further proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.